**Harold Reed HOKE, M.D., Appellant,**

v.

**RETAIL CREDIT CORPORATION**
**et al., Appellees.**

No. 74–2358.

United States Court of Appeals,
Fourth Circuit.

Argued June 12, 1975.

Decided Aug. 19, 1975.

Certiorari Denied Jan. 26, 1976.
See 96 S.Ct. 878.

Grover Prevatte Hopkins, Tarboro, N. C., for appellant.

Michael E. Weddington, Raleigh, N. C. (James D. Blount, Jr., Smith, Anderson, Blount & Mitchell, Raleigh, N. C., on brief), for appellees.

Before HAYNSWORTH, WINTER and CRAVEN, Circuit Judges.

WINTER, Circuit Judge:

■ Suing under the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1671 et seq.,[1] Dr. Harold Reed Hoke sought damages from Retail Credit Corporation (Retail Credit) and two of its employees[2] for injuries allegedly sustained from inaccurate information contained in a personal report issued by Retail Credit to the Texas Board of Medical Examiners.

1. The action was specifically based on 15 U.S.C. §§ 1681n and 1681o which create causes of action in favor of consumers against consumer reporting agencies if the reporting agency has either negligently or willfully failed to comply with "any requirement" (emphasis added) of FCRA. The requirement specifically at issue here is § 1681e(b) which provides that a consumer reporting agency must "follow reasonable procedures to assure maximum possible accuracy of the information" contained in a consumer report; Dr. Hoke alleges that Retail Credit did not do so here.

Jurisdiction is based on 15 U.S.C. § 1681p which gives jurisdiction to enforce any liability created by the Act, without regard to amount in controversy, to "any appropriate United States district court" or "any other court of competent jurisdiction."

2. Neither § 1681n nor § 1681o creates a cause of action against the individual employees of a consumer reporting agency. Although the district court noted this omission, it did not decide if employees could be sued under FCRA since it concluded that FCRA was not allegedly violated. We do not decide the issue either. The district court will undoubtedly reach it on remand.

The Board had requested the report to aid in its assessment of Dr. Hoke's application for a license to practice medicine in Texas. The district court rendered summary judgment in favor of the defendants, concluding that the plaintiffs could not prevail as a matter of law because the report was not a "consumer report" within the meaning of FCRA.[3] Since, in our view, the report was a "consumer report" covered by FCRA we reverse and remand for further proceedings consistent with this opinion.

### I.

■ The case turns on FCRA's definition of "consumer report." In pertinent part, § 1681a(d) provides:

(d) The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (1) credit or insurance to be used primarily for personal, family, or household purposes, or (2) employment purposes, or (3) other purposes authorized under section 1681b of this title. . . .[4]

A consumer report, therefore, is virtually any information communicated by a "consumer reporting agency" for any one of the purposes enumerated in 1681a and 1681b, including but not limited to, "employment purposes" (§ 1681a(d) and § 1681b(3)(B)) and eligibility for a government license or benefit (§ 1681b(3)(D)). Since there can be no question but that Retail Credit is a consumer reporting agency within the terms of the FCRA,[5] we must decide whether the allegedly inaccurate information was furnished by Retail Credit for one or more of the purposes specified in §§ 1681a and 1681b.

### II.

We consider first if the furnishing of the report was for "employment purposes" within the meaning of §§ 1681a(d) and 1681b(3)(B).[6]

■ The purpose of the Texas licensing procedure is to assess and certify Dr. Hoke's fitness and eligibility to practice medicine within the state of Texas. Although the terminology customarily used with regard to the employment of persons engaged in ordinary commercial activities is sometimes ill-suited to a description of the practice of a learned profession, in the context of FCRA the practice of medicine necessarily takes the form of some type of "employment."

---

3. The district court concluded that subject matter jurisdiction was lacking, although its summary judgment, under Rule 56 F.R.Civ.P., was a final adjudication on the merits. Under § 1681p, the district court had subject matter jurisdiction because this was an "action to enforce any liability created" by FCRA. We therefore construe the judgment as an adjudication, on the merits, that the report involved here was not a "consumer report" and thus that this "action to enforce" the liabilities created by FCRA could not be maintained as a matter of law. *See generally* 10 Wright & Miller, Federal Practice and Procedure, § 2712 (1973).

4. The remainder of § 1681a describes three types of reports which are excluded from the statutory definition, none of which is relevant here.

5. Section 1681a(f) provides:

The term "consumer reporting agency" means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

6. The "employment purposes" language of § 1681a(d) has been quoted in the text. Section 1681b(3)(B) is no more specific. It merely provides that a consumer reporting agency may furnish a consumer report to a person which it has reason to believe "intends to use the information for employment purposes."

A physician may accept full or part-time employment as a physician by a hospital, clinic, medical school, or professional association. In those instances he is an employee, albeit a professional one. If he concludes to practice his profession as a single practitioner or as a member of a medical partnership, we still consider him as "employed," either self-employed or employed by the patients who pay him fees for the medical services that he provides.[7] And since the *sine qua non* to the practice of medicine in Texas, and elsewhere, is a license to practice medicine, and since the information furnished by Retail Credit related to the question of whether the license would be granted, we have no hesitancy in concluding that the information was furnished for "employment purposes" in the broad generic sense of the words.

The statutory definition of employment purposes within the Act is (15 U.S.C. § 1681a(h)):

> The term "employment purposes" when used in connection with a consumer report means a report used for the purpose of evaluating a consumer for employment, promotion, reassignment or retention as an employee.

██ The statutory definition adopts the generic meaning of the words defined. We note, of course, the concluding words of this definition—"as an employee." It might be argued that the term "employment purposes" is restricted to the situation in which information is sought by an actual or prospective employer, e. g., if the Texas Licensing Board were to hire Dr. Hoke itself. But we think not. Such an argument assumes that the phrase "as an employee" modifies both "retention" *and* the words

preceding it—"employment, promotion, reassignment." We think it modifies only "retention." The words "employment, promotion, [and] reassignment," having specific meanings in the area of activities for the production of income, need no modifier. By contrast, "retention," a word of varied meanings in varied contexts, does. Hence, we conclude that the statutory and generic definitions of the operative words are congruent and that furnishing information in the present circumstances brought Retail Credit under the terms of FCRA.

### III.

The report involved here is also a consumer report under §§ 1681a(d)(3) and 1681b(3)(D). We reach this conclusion from the actual language of §§ 1681a(d) and 1681b(3)(D) and from the presence of § 1681f, its legislative history, and its place in the overall statutory scheme. Section 1681b(3)(D) provides:

> A consumer reporting agency may furnish a consumer report under the following circumstances and no other:
>
> .  .  .  .  .
>
> (3) To a person which it has reason to believe—
>
> .  .  .  .  .
>
> (D) intends to use the information in connection with a determination of the consumer's eligibility for a license or other benefit granted by a governmental instrumentality *required by law to consider an applicant's financial responsibility or status* .  .  .. (Emphasis added.)

---

7. If we were to apply the common-law concept of employee, we would undoubtedly conclude that a physician who practiced his profession as a sole practitioner or as a member of a medical partnership was an independent contractor, and not an employee, because of the absence of control over the manner in which he afforded expert medical services. But in construing FCRA, we are cognizant of its broad remedial purposes, 15 U.S.C. § 1681, and we are not constrained to limit its application by the common-law concept of master and servant. *N. L. R. B. v. Hearst Publications,* 322 U.S. 120, 64 S.Ct. 851, 88 L.Ed. 1170 (1944); *Brennan v. Gilles & Cotting, Inc.,* 504 F.2d 1255 (4 Cir. 1974).

■ Retail Credit asserts that the report involved here is not a "consumer report", under those sections. Its argument is that § 1681a(d) incorporates all of the language contained in § 1681b(3)(D), including the requirement that the governmental agency to which the report is furnished be "required by law to consider an applicant's financial responsibility or status." Since the Texas State Board of Medical Examiners, under the evidence adduced on the motion, is not required by law to be concerned with plaintiff's financial responsibility or status, so the argument runs, the information furnished could not constitute a "consumer report." [8] We disagree.

While § 1681a is a purely definitional section, § 1681b is, as its title states, a list of the "[p]ermissible purposes of consumer reports." Only secondarily does § 1681b(3)(D) supplement § 1681a's definition of what is a "consumer report," and then only according to the language in the latter and not because of an additional specific definition in § 1681b.

What is most significant is that § 1681a(d), in listing the purposes which render the furnishing of information a "consumer report" speaks in terms of "eligibility for  . . .  [the] purposes authorized under section 1681b  . . . ." Translated to the facts of this case, § 1681a(d)(3) may be read to mean that the furnishing of information about an individual to serve as a factor for a determination of plaintiff's eligibility for a license to practice medicine renders the report a "consumer report," irrespective of the actual authority of the Texas licensing board to consider financial responsibility or status, or Retail Credit's

reasonable belief as to the board's authority. The matter of the board's authority to consider financial responsibility or status, or Retail Credit's reasonable belief as to the board's authority in that respect, is significant only to Retail Credit's statutory right to furnish the information, not as to whether the information furnished is a "consumer report." [9] We so read it. It is not necessary to read § 1681a(d)(3) as incorporating all of the minutiae of § 1681b(3)(D), only the general subject matter.

There is a compelling reason to read § 1681a(d)(3) as incorporating only the general subject matter (but not all specific detail) of § 1681b(3)(D). A reading which separates restrictive and definitional aspects of § 1681b(3)(D) is necessary to give meaning and effect to § 1681f, which provides:

> Notwithstanding the provisions of section 1681b of this title, a consumer reporting agency may furnish identifying information respecting any consumer, limited to his name, address, former addresses, places of employment, or former places of employment, to a governmental agency.

If § 1681a(d)(3), the definitional provision, is read to incorporate all of the restrictive detail of § 1681b(3)(D), § 1681f would be rendered superfluous, because a consumer reporting agency (Retail Credit) could report the information authorized by § 1681f, and more, with impunity, if it could establish that the governmental agency to which it reported was not required by law to consider an applicant's financial responsibility or status and, hence, that the information reported was not a "consumer

---

**8.** A defect in Retail Credit's argument, but not the one on which we pitch our decision, is that it overlooks the provision of § 1681b(3)(D) that the furnisher of information "has reason to believe" that the licensing body to which a report is made be required by law to investigate financial responsibility or status. The actual authority of the Texas Board may be irrelevant if Retail Credit had a good faith belief

that the Board had a statutory duty to investigate financial responsibility.

**9.** All of the details of § 1681b(3)(D) are necessarily relevant to authority to issue the report by virtue of the opening language of that section: "under the following circumstances and no other  . . . ."

report" within the meaning of § 1681a(d). Section 1681b(3)(D) would, in effect, restrict the coverage of FCRA rather than the activities of consumer reporting agencies.

The legislative history belies this result. The Senate committee report explained the relationship between the two sections in this way:

> The disclosure of information to governmental agencies is limited to identifying type information . . . unless the governmental agency has obtained a court order or is a bona fide creditor, insurer, employer, or licensor." Report of the Committee on Banking and Currency, Fair Credit Reporting, Sen.Rep.No.91–517, 91st Cong., 1st Sess. at 6 (1969).[10]

*See also United States v. Puntieri,* 379 F.Supp. 332 (D.N.Y.1974); *FTC v. Manager, Retail Credit Co., Miami Branch Office,* 357 F.Supp. 347 (D.D.C.1973), rev'd on other grounds, U.S.App.D.C., 515 F.2d 988 (1975). If Retail Credit's view of FCRA were adopted, a consumer reporting agency would have greater latitude in providing information to a government agency that was not a "bona fide creditor, insurer, employer, or licensor" than in reporting to one that was. This was clearly not the result intended.

Since the information furnished by Retail Credit was a "consumer report" within the meaning of § 1681a(d) both because it was to be used for "employment purposes," as defined in §§ 1681a(h) and 1681b(3)(B), and for determination of plaintiff's eligibility for a license to practice medicine within the meaning of § 1681b(3)(D) as partially incorporated into § 1681a(d), plaintiff must be afforded the opportunity to prove his case.

*Reversed and remanded.*

---

**10.** The report quoted has reference to the original version of the Bill, S. 823. Although certain amendments on other points were incorporated into the version which was finally passed, there were no amendments to the provisions concerning communication of consumer information to government agencies.