Mark A. RAMSDEN and Raelynn Ramsden, husband and wife, individually and d/b/a Ramsden Dairy,

and

Milton R. Ramsden, individually and d/b/a Ramsden Dairy, Plaintiffs,

v.

AGRIBANK, FCB, Defendant.

No. 98–C–0221–C.

United States District Court,
W.D. Wisconsin.

Sept. 8, 1999.

Robert J. Kasieta, Kasieta Legal Group, LLC, Madison WI, for Ramsden Dairy, Mark A. Ramsden, plaintiffs.

Mr. & Mrs. Mark Ramsden, Rudolph WI, for Ramsden, Raelynn, plaintiffs.

Milton R. Ramsden, Wisconsin Rapids WI, pro se.

Patricia Gibeault, Axley Brynelson, Madison WI, for AgriBank, FCB, defendant.

Dr. William Croft, Crivitz WI, for Croft, Dr. (Third Party Deponent), defendant.

## OPINION AND ORDER

CRABB, District Judge.

Judgment was entered for defendant AgriBank, FCB in this civil action in February 1999. The case is before the court now on defendant's motion for preliminary and permanent injunctive relief to protect the court's judgment. Defendant is asking this court to enjoin the Circuit Court for Portage County, Wisconsin, from conducting any further proceedings brought by plaintiffs against defendant AgriBank or its agent, Thomas Hass, and to enjoin plaintiffs from prosecuting or initiating any additional proceedings against defendant AgriBank or any of its present or former officials, directors, employees or agents on claims arising out of the transaction that gave rise to this case. Defendant contends that the state court suit is barred by the principles of claim and issue preclusion because plaintiffs are making the same claims in state court on which they lost in this court.

Jurisdiction is present. This court had jurisdiction over the original action. This proceeding has the effect of "a supplemental and ancillary bill in equity" to "effectuate the adjudication" made by this court; it is brought to "preserve the fruits and advantages of a judgment." *Local Loan*

*Co. v. Hunt,* 292 U.S. 234, 239, 54 S.Ct. 695, 78 L.Ed. 1230 (1934).

Ordinarily, federal courts are prohibited by the Anti–Injunction Act, 28 U.S.C. § 2283, from enjoining the proceedings of a state court. The act has three specific exceptions, which are to be interpreted narrowly because of the sensitive nature of federal courts' interfering with state court proceedings. The exception relevant to this case provides an exemption from the act's prohibitions when necessary "to protect or effectuate [a court's] judgments." *Id.* This is the unusual situation in which that exception is applicable. Defendant AgriBank has established that all of the elements of claim preclusion are present and that it is entitled to permanent injunctive relief. The state court has refused to accept the preclusive effect of the federal court judgment. Accordingly, I will grant defendant's motion.

For the purpose of deciding the motion, I find that the following facts are undisputed.

## FACTS

Plaintiffs in this action, Mark A. Ramsden, Raelynn Ramsden and Milton R. Ramsden, brought suit against Farm Credit Services of North Central Wisconsin ACA, AgriBank, FCB, and Thomas E. Hass in the Circuit Court for Portage County, Wisconsin in February 1997, alleging tortious conduct in the sale of certain agricultural property known as the Hartjes farm. The state court dismissed the action against Hass, whereupon plaintiffs dismissed the complaint against the remaining defendants without prejudice and appealed Hass's dismissal to the state court of appeals.

While the appeal was pending, plaintiffs brought a second action against defendant AgriBank in the Circuit Court for St. Croix County, Wisconsin, alleging misrepresentation in the sale of the Hartjes farm, among other tortious acts. AgriBank removed the case to the United States District Court for the Western District of Wisconsin, alleging complete diversity of citizenship and an amount at issue of more than $75,000.

In federal court, plaintiffs filed an amended complaint and a second amended complaint, alleging that they and their cattle were poisoned by benzene contamination present in the water of the farm sold to them by defendant AgriBank. After conducting voluminous discovery, including 35 depositions, defendant moved for summary judgment, contending that plaintiffs did not have evidence sufficient to show that any benzene contamination in the well water or surrounding soil was a cause of plaintiffs' alleged health problems or the deaths of their cattle.

In deciding defendant's motion, I found the following facts to be undisputed. Defendant acquired title to the farm in 1990 and spent several years trying to sell the property. In 1995, defendant had an underground storage tank removed from the farm and learned that the soil in the area was contaminated with gasoline and required remediation. Defendant's employee, Thomas Hass, hired a company known as Cedar Corporation to do the remediation work; Cedar Corporation tested the well water on the property and reported orally to Hass that it had found no contamination. In February 1996, defendant sold the property at auction to plaintiff Mark Ramsden. Hass conducted the auction. He announced that the sale was "as is," that defendant AgriBank would be responsible for cleanup of any contamination related to the storage tank, that the well water had recently been tested and no contamination had been detected, that the water was safe for human consumption and that the well had previously supported a herd of 160 dairy cattle. After the sale, Hass received Cedar Corporation's written report confirming that no contamination had been detected. Before closing on the property, plaintiffs had their own well water test run. The results were negative and Mark Ramsden received a license to

operate a dairy. Plaintiffs Mark and Raelynn Ramsden lived on the farm less than six months. Plaintiff Milton Ramsden never lived there.

In responding to defendant's motion for summary judgment, plaintiffs had to show that they had sufficient evidence of causation to raise a jury question. For that purpose, plaintiffs relied on the testimony of William Croft, a veterinarian. Croft was prepared to testify as to levels of contamination, although he did not purport to have any training or experience in soil science generally or in the detection of contaminants in particular. He was prepared also to testify about the results of bovine urinalyses he performed on plaintiffs to determine the level of benzene to which they had been exposed, although he did not offer any evidence that bovine urinalyses are accurate or helpful in assessing human exposure to contaminants. Finally, he intended to testify that a previous occupant of the farm had contracted a fatal form of cancer in 1998 from his exposure to benzene from the storage tank on the property when he had lived there twenty-five years earlier, although Croft had no evidence that the property had been contaminated in 1973, when the previous occupant had lived there; he had never examined the deceased or reviewed his medical history; and he had never interviewed the deceased's family.

Applying *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), to Croft's proposed testimony, I concluded that the testimony lacked scientific reliability and validity and therefore was not admissible as evidence. With this testimony eliminated, plaintiffs were left with no way of proving through expert testimony that the benzene level recorded on the farm had ever exceeded 57 parts per billion and no evidence that benzene levels of 57 ppb or lower could have produced the negative effects plaintiffs alleged they and their cattle had suffered in the six months plaintiffs Mark and Raelynn Ramsden and their cattle

lived on the farm. Because Wisconsin law requires expert testimony to establish causation when toxic exposures are involved, I granted defendant's motion for summary judgment. The trial scheduled to begin on February 16, 1999, was canceled and judgment was entered for defendant on all of plaintiffs' claims. Plaintiffs appealed the judgment to the Court of Appeals for the Seventh Circuit but dismissed the appeal voluntarily in exchange for a waiver by defendant of recovery of its costs.

While plaintiffs' appeal was pending, the Wisconsin Court of Appeals reversed the trial court's dismissal of Hass from the state court action and remanded the case to the trial court, where it is being pursued by plaintiffs. All of plaintiffs' allegations against Hass in that suit concern actions taken by Hass in the scope of his employment with defendant AgriBank and all of the allegations were the subject of this federal court action against defendant AgriBank.

In March 1999, Hass moved for summary judgment in the Portage County court, arguing claim and issue preclusion, among other grounds. The motion was denied in July 1999. The state court found that the elements were present for claim preclusion: there was complete identity between the parties or their privies in both suits; the misrepresentation claims against Hass in the state court action were identical to those made against AgriBank in the federal action and all of the claims arose out of the same transaction; and this court's decision was a final decision by a court of competent jurisdiction. However, the court found that considerations of equity and fairness barred application of claim preclusion to the state court action. In its view, the law of claim preclusion was designed to draw a line between claims that are meritorious and those that are vexatious, repetitious and needless. *See Ramsden v. Hass,* 97 CV 30, slip op. at 4 (Portage Co.Cir.Ct. July 23, 1999) (citing *Northern States Power Company v. Bugher,* 189 Wis.2d 541, 549, 525 N.W.2d 723,

727 (1995)). The court found that under Wisconsin law, plaintiffs' expert would have been allowed to testify because he would not have been subjected to the *Daubert* requirements that an expert be qualified to give his opinions and that he follow scientific methods in reaching his conclusion. *See id.* at 5–6. Because of the significant differences the court found between Wisconsin evidentiary rules and those of the federal courts, because defendant AgriBank had removed the case to federal court and because the court could not find that plaintiffs were engaged in vexatious, repetitious and needless litigation, the state court concluded that it would be unfair to apply claim preclusion to bar plaintiffs' state court suit. *Id.* at 6.

The circuit court held also that the doctrine of issue preclusion did not bar relitigation of the plaintiffs' claims in state court. It concluded that because Wisconsin state courts and Wisconsin federal courts have different "bundles of legal principles" they apply to determine the admissibility of expert testimony, the doctrine of issue preclusion could not apply. This means that there is no bar to trying the same issues again. In the state court's opinion, the federal court proceeding *"did not provide an adequate opportunity for a full and fair adjudication of the underlying issue in this case."* (Emphasis in original).

In defending the federal action, defendant incurred fees and costs of more than $400,000.

## OPINION

### A. *Availability of Injunction against Relitigation*

In a system as ripe for friction as the complex system of dual state and federal courts, the Anti–Injunction Act, 28 U.S.C. § 2283, serves an important purpose. It prohibits a federal court from enjoining ongoing proceedings in state court, with only three exceptions: 1) where an injunction is authorized expressly by federal statute; or 2) where it is necessary in aid of the federal court's jurisdiction; or 3) where it is required in order to protect or effectuate the court's judgment. The act reflects Congress's general policy that "state proceedings 'should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately [the Supreme] Court.'" *Chick Kam Choo v. Exxon Corp.,* 486 U.S. 140, 146, 108 S.Ct. 1684, 100 L.Ed.2d 127 (1988). The act is effective; it is a rare event when a federal court is asked to intervene to stop a state court proceeding. It is even more rare when the federal court accepts the invitation.

As cautious as courts may be about reaching out to enjoin a state court from proceeding with litigation, there are circumstances that require such action. One such circumstance is the specter of parties relitigating in state court the same matters that have been decided by the federal court. *See* 17 Charles A. Wright, Arthur R. Miller, E. Cooper, *Federal Practice and Procedure* § 4226 (2d ed. 1988) ("The courts have clearly understood that the third exception [to the Anti–Injunction Act] does allow injunctions to prevent relitigation."). *See also Midkiff v. Tom,* 725 F.2d 502 (9th Cir.1984) (holding that issuance of injunction was necessary to protect federal court judgment when Hawaiian state courts refused to grant it preclusive effect); *In re Corrugated Container Antitrust Litigation,* 659 F.2d 1332, 1334–35 (5th Cir. Unit A 1981) (upholding injunction forbidding certain plaintiffs in federal class action suit from pursuing litigation in state court in South Carolina and rejecting as frivolous plaintiffs' contention that denying them opportunity to sue for damages under more favorable South Carolina law deprived them of property without due process of law); *Harper Plastics, Inc. v. Amoco Chemicals Corp.,* 657 F.2d 939, 946–47 (7th Cir.1981) (holding that third exception to Anti–Injunction Act permits

federal courts to enjoin state court relitigation of matters finally adjudicated in federal court, including matters that were not raised but could have been raised in federal proceeding); *Samuel C. Ennis & Co., Inc. v. Woodmar Realty Co.*, 542 F.2d 45, 48 (7th Cir.1976) (reversing district court's denial of injunction to restrain parties to closed bankruptcy proceeding from pursuing damage suit in state court in Indiana against trustee in bankruptcy and various other participants in bankruptcy proceeding; "alternative to allowing such injunctions 'is that a federal judgment entered perhaps after years of expense in money and energy ... comes to nothing that is final. It is to be only the basis for a plea of res judicata which is to be examined by another court, unfamiliar with the record already made, to determine whether the issues were or were not settled in the former adjudication.' ") (quoting *Toucey v. New York Life Ins. Co.*, 314 U.S. 118, 144, 62 S.Ct. 139, 86 L.Ed. 100 (1941) (Reed, J., dissenting)).

I conclude that § 2283 permits the issuance of an injunction if defendant AgriBank can prove that it has established all the elements of claim or issue preclusion or both. I turn then to that question.

### B. *Elements of Claim Preclusion*

■ Technically, the question of preclusion is governed by federal rules, because the first judgment was entered in federal court. *See Equal Employment Opportunity Comm'n v. Harris Chernin, Inc.*, 10 F.3d 1286, 1289 (7th Cir.1993) (federal rules of claim preclusion apply when first suit is brought in federal court). In this case, however, it does not matter whether federal law or Wisconsin law applies. In either jurisdiction, the elements of claim preclusion are: 1) a final judgment on the merits in an earlier action; 2) identity of the cause of action in the earlier and the later suits; and 3) identity of the parties or privies in the two suits. *See id.; Northern States Power Co.*, 189 Wis.2d at 551, 525 N.W.2d at 728.

### 1. *Final judgment*

■ Plaintiffs make a weak attempt to contest the fact that a final judgment on the merits was entered by this court. They argue that the judgment does not bar them from proceeding because it did not recite the words, "with prejudice." Not surprisingly, they do not cite any support for this argument. Whether the final judgment said "with prejudice" is irrelevant. The critical determinants are that all of the claims and issues raised were resolved and judgment was entered for defendant. *See Prakash v. American Univ.*, 727 F.2d 1174, 1181–82 (D.C.Cir. 1984) (summary judgment is ruling on merits of case; as decision on merits, it bars action for claim preclusion purposes); *O'Neill v. Dell Publishing Co.*, 630 F.2d 685, 690 (1st Cir.1980) (with grant of summary judgment in their favor, defendants can raise issue preclusion as bar to plaintiff's claims against them); *Hoke v. Retail Credit Corp.*, 521 F.2d 1079, 1081 n. 3 (4th Cir.1975) (summary judgment ruling was adjudication on merits); *Tuley v. Heyd*, 482 F.2d 590, 594 n. 2 (5th Cir.1973) ("Of course, a summary judgment is always 'with prejudice.' "); 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4444 (2d ed.1981).

### 2. *Identity of causes of action*

■ The causes of action in this case are identical to those raised in the pending state court proceeding. In both cases, plaintiffs alleged that defendant AgriBank, through its agent, Thomas Hass, misrepresented the condition of the farm defendant sold to plaintiffs, intentionally inflicted emotional distress upon plaintiffs and was negligent in failing to ascertain the truth about the condition of the property and that as a result, plaintiffs and their cattle were injured. The alleged facts are the same that plaintiffs alleged in this court. The transaction is the same: the allegedly improper sale of a contaminated property.

Plaintiffs do not deny that the causes of action are the same, but they argue with-

out explanation that because this court excluded Croft's testimony, they are not relitigating the same claims against Hass. Plts.' Br. in Opp., dkt. #185, at 16. In assessing whether claims are identical for the purpose of applying claim preclusion, a court looks closely at the claims asserted in the two proceedings. *See, e.g., Samuel C. Ennis & Co.*, 542 F.2d at 47–48 (finding that same allegations of fraud asserted in state court proceeding had been ruled upon years earlier in bankruptcy proceeding); *cf. Bluefield Community Hosp., Inc. v. Anziulewicz*, 737 F.2d 405 (4th Cir.1984) (denying request for injunction to prevent state court litigation after analyzing rights asserted in second case and finding them distinct from those asserted in earlier case). If the claims are the same, as they are in these two cases, then there is an identity of claims for claim preclusion purposes. *See Northern States Power Co.*, 189 Wis.2d at 553–55, 525 N.W.2d at 728–29 (Wisconsin uses transactional approach derived from *Restatement (Second) of Judgments* § 24 (1982) to decide whether two suits involve same cause of action; doing so requires pragmatic determination of what factual grouping constitutes "transaction," looking to " 'such considerations as whether facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage' "). Whether the party asserting the claim was allowed to introduce specific evidence in support of that claim is an entirely different question, unrelated to deciding whether the same basic legal and factual matters were at issue in both cases.

### 3. *Identity of parties*

The final element of claim preclusion is established by the fact that the parties to both suits are identical. Plaintiffs are the same and Hass is in privity with defendant AgriBank, his employer and principal. *See Great Lakes Trucking Co., Inc. v. Black*, 165 Wis.2d 162, 170, 477 N.W.2d 65, 68 (Ct.App.1991) (holding that licensed agent is in privity with principal for purpose of establishing identity of parties; record establishes "classic employer-employee relationship in which [corporation] is vicariously liable for conduct of [agent]"). Plaintiffs do not deny that Hass and defendant AgriBank, his employer, are the same party for claim preclusion purposes.

### 4. *Equitable considerations*

■ By its nature, claim preclusion is an equitable doctrine, designed to promote fairness to the victor, judicial efficiency and conservation of public and private resources. *See Northern States Power*, 189 Wis.2d at 549, 525 N.W.2d at 727. "[T]he doctrine of claim preclusion provides an effective and useful means to 'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.'" *Id.* at 559, 525 N.W.2d at 731 (quoting *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)). It does not follow, however, that a court may avoid application of the principle because of its own view of the fairness or equity of doing so in a particular case. "A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action," *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981), even if the judgment was wrong or if it rested on a legal principle subsequently overruled. An erroneous judgment can be corrected only by direct review. *See id.* In *Moitie*, the Supreme Court reversed the court of appeals' refusal to apply the principles of claim preclusion in a situation in which seven parties had filed price-fixing class actions that were dismissed on a ground later held to be legally incorrect. The plaintiffs had appealed in five of the cases; the plaintiffs in the remaining two had chosen to file in state court, where the

cases were removed by the defendants to federal court. The court of appeals believed that the new legal interpretation should apply to all seven cases: the principles of claim preclusion should give way to "public policy" and "simple justice" when the position of the non-appealing parties was so closely interwoven with those of the appealing parties. In reversing the appellate court, the Supreme Court said that it "did not see the grave injustice which would be done by the application of accepted principles of res judicata." To the contrary, " '[s]imple justice' is achieved when a complex body of law developed over a period of years is evenhandedly applied." *Id.* at 401, 101 S.Ct. 2424. Reliance on "public policy" was similarly misplaced: " '[p]ublic policy dictates that there be an end of litigation.' " *Id.* (quoting *Baldwin v. Traveling Men's Ass'n*, 283 U.S. 522, 525, 51 S.Ct. 517, 75 L.Ed. 1244 (1931)). *See also Supporters to Oppose Pollution v. Heritage Group*, 973 F.2d 1320, 1325 (7th Cir.1992) ("*Moitie* scotches equitable arguments" against application of principles of preclusion in any particular situation).

Just as fairness and equity are no reason not to apply claim preclusion, a party seeking its application need not show that the particular circumstances are abusive or vexatious. *See First Alabama Bank of Montgomery v. Parsons Steel, Inc.*, 825 F.2d 1475, 1482 (11th Cir.1987) (holding that showing of bad faith prosecution or harassment not required for issuance of injunction to prohibit relitigation). It is the mere fact of relitigation that is considered vexatious and harassing, not the motives of the litigant or the merits of the particular litigation.

Defendant AgriBank has shown all of the elements required for application of the doctrine of claim preclusion. Therefore, it is not necessary to consider whether defendant could also establish the elements of issue preclusion.

### C. *Defendant's Entitlement to an Injunction*

■ As the party moving for an injunction, defendant must show its entitlement to such relief. The courts are not in precise agreement about the nature of the showing that must be made. *See, e.g., In re SDDS, Inc.*, 97 F.3d 1030, 1041 (8th Cir.1996) (applying familiar four-part test to request for injunction); *Daewoo Electronics Corp. v. Western Auto Supply Co.*, 975 F.2d 474, 478 (8th Cir.1992) (movant must show that it would suffer irreparable harm if injunctive relief not granted); *First Alabama Bank*, 825 F.2d at 1484 (movant must make " 'strong and unequivocal showing of relitigation' ") (quoting *Delta Air Lines, Inc. v. McCoy Restaurants, Inc.*, 708 F.2d 582, 585–86 (11th Cir.1983)). *See also* 18 Wright et al., *Federal Practice and Procedure*, § 4405, p. 40 ("[I]njunction must satisfy the general equitable requirement that the 'legal' remedy by defensive assertion of res judicata be found inadequate."). The distinctions among the courts and commentators are of no moment. Defendant has demonstrated that it can meet any of the suggested standards. It has shown that it is entitled to relief; it will suffer irreparable harm if an injunction does not issue and it has no adequate remedy at law; it will suffer more harm if an injunction does not issue than plaintiffs will suffer if one does issue and the public interest will be advanced by the issuance of an injunction.

Plaintiffs argue that defendant cannot show irreparable harm because it faces nothing worse than another round of litigation. Citing *Younger v. Harris*, 401 U.S. 37, 46, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), plaintiffs say that "the cost, anxiety, and inconvenience" of having to defend a lawsuit are not generally considered sufficient to show irreparable injury. *Younger* involved a state criminal proceeding; this case involves a dispute between private parties in which the state has no interest in the outcome. The distinction is important. The standard for an injunction set out in *Younger* is that "even immediate injury is insufficient unless it is 'both great and immediate.' " *Id.* (citations omitted).

However, considerations of comity do not require application of the higher *Younger* standard for irreparable injury when a purely private lawsuit is concerned. *See First Alabama Bank*, 825 F.2d at 1482–83 (*Younger* principles not applicable in suit in which important state interests not involved).

The obvious prospect of relitigation suffices to show that defendant will suffer irreparable harm if an injunction does not issue to stop the state court proceeding. The balance of harms is clearly in defendant's favor. The loss of the opportunity to relitigate in state court is not a legitimate harm that should be weighed against defendant's injury. *In re SDDS, Inc.*, 97 F.3d at 1041.

The public's interest in finality of litigation and repose for litigants will be served by the issuance of an injunction. *See Daewoo Electronics Corp.*, 975 F.2d at 478–79 ("Rather than interfere with [state's] interests, [an] injunction will promote judicial economy and protection of parties from harassing, duplicative litigation, interests which the federal and state courts share."). Finally, defendant has shown that it does not have a legal remedy in state court: the state court has held that the case must be relitigated. Accordingly, I conclude that the injunction should issue.

### D. *Additional Issues*

There remains a minor question about the status of the state court proceedings. In *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986), the Supreme Court held that if a state court has finally rejected an assertion of claim preclusion, the Full Faith and Credit Act becomes applicable and a federal court must turn to state law to determine the preclusive effect of the state court's decision. In this case, neither side has argued that the state court's denial of defendant's motion for summary judgment is a final judgment or that it would otherwise be viewed as having preclusive effect in the state courts of Wisconsin. I have found no case law that would suggest it would have such effect.

■ The parties have argued at some length in their briefs whether plaintiffs had any option but to remain in federal court once defendant removed the case from the Circuit Court for St. Croix County. The point is irrelevant. The applicability of the doctrine of claim preclusion does not hinge on the parties' forum preferences. *See Chicago, R.I. & P. Ry. v. Schendel*, 270 U.S. 611, 615, 46 S.Ct. 420, 70 L.Ed. 757 (1926) ("It is elementary, of course, that, in any judicial proceeding, the arrangement of the parties on the record, so long as they are adverse, or the fact that the party against whom the estoppel is pleaded was an objecting party, is of no consequence.") If it were otherwise, there would be no such thing as a final preclusive judgment in a removed case.

■ It is equally immaterial that this case was initiated after the original action was begun in Portage County. It is the first *judgment* entered that has preclusive effect, not the judgment in the first filed suit. *See Schendel*, 270 U.S. at 616–17, 46 S.Ct. 420 ("irrespective of which action or proceeding was first brought, it is the first final judgment rendered in one of the courts which becomes conclusive in the other as *res judicata*."); *Carr v. CIGNA Securities, Inc.*, 95 F.3d 544, 546 (7th Cir. 1996).

■ Plaintiffs have not argued either in opposition to this motion or to defendant's motion for summary judgment that their substantive rights were infringed by this court's application of the principles of *Daubert*. A hint of such an argument can be found in the state trial court's decision, in which the court seems to say that the application of federal evidentiary rules in this diversity case violated plaintiffs' substantive rights because the use of the rules was outcome-determinative. *See Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945) (reformulating rule of *Erie Railroad Co. v.*

*Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), requiring application of state rules of decision to all nonfederal matters; new test was that applicability of state law turned on whether "it significantly affected the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim in a State court"). It is unnecessary to delve into this subject (or to discuss the later formulations of the *Erie* rule, *see, e.g., Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), or the probable inapplicability of *Erie* to the Federal Rules of Evidence, *see* 19 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4512, p. 414 (2d ed.1996)), because plaintiffs never raised the issue in this court. If plaintiffs believed that their substantive rights were impaired by application of *Daubert* to their case, they should have said so during the litigation of their case. They cannot remain silent in federal court and then use the issue as the basis for relitigating in state court.

In sum, defendant has shown its entitlement to permanent injunctive relief. The order awarding such relief will apply only to plaintiffs' suit against Thomas Hass (or any suits plaintiffs might try to bring in the future against defendant or any of its privies). Plaintiffs remain free to pursue their claims against Cedar Corporation.

### ORDER

IT IS ORDERED that the motion of defendant AgriBank, FCB, for a permanent injunction is GRANTED; the Circuit Court for Portage County, Wisconsin, is enjoined from conducting any further proceedings brought against defendant AgriBank, FCB, or any of its privies by plaintiffs Mark A. Ramsden, Raelynn Ramsden individually and Milton R. Ramsden, individually and d/b/a as Ramsden Dairy, arising out of the transaction that gave rise to this case. FURTHER, IT IS ORDERED that plaintiffs Mark A. Ramsden, Raelynn Ramsden, husband and wife, individually and d/b/a Ramsden Dairy and Milton R.

Ramsden, individually and d/b/a as Ramsden Dairy, are enjoined from prosecuting or initiating any additional proceedings against defendant AgriBank, FCB, or any of its present or former officials, directors, employees or agents on claims arising out of the transaction that gave rise to this case.