Nicholas S. Schreiner and Nicole J. Schreiner, Plaintiffs,

State of Wisconsin Division of Health & Family Services, Wisconsin Physicians Service Insurance Corp., and Tommy Thompson, Secretary of Department of Health & Family Services, Subrogated-Plaintiffs,

v.

Wieser Concrete Products, Inc. and Westfield Insurance Co., Defendants-Third-Party Plaintiffs-Co-Appellants,†

Poly-America, LP, Poly-America, Inc. and Up North Plastics, Inc., Defendants-Respondents,

Henry Huffcutt Co., Inc., Defendant-Third-Party Plaintiff-Appellant,

v.

Schreiner Farms, Inc., Third-Party Defendant,

McMillan-Warner Mutual Insurance Co., Intervening-Defendant.

Court of Appeals

*No. 2005AP1142. Submitted on briefs April 18, 2006.
—Decided June 13, 2006.*

† Petition to review denied 9-11-06.

2006 WI App 138

(Also reported in 720 N.W.2d 525.)

On behalf of the defendant-third-party-plaintiff-appellant, the cause was submitted on the briefs of *John R. Runde* of *Terwilliger, Wakeen, Piehler & Conway, S.C.* of Wausau.

On behalf of the defendants-third-party-plaintiffs-co-appellants, the cause was submitted on the briefs of *Brian A. Wood, William L. Davidson*, and *Jason R. Prochnow* of *Lind, Jensen, Sullivan & Peterson* of Minneapolis, MN.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Robert L. Binder* of *Foley, & Lardner LLP* of Milwaukee.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J.   Wieser Concrete Products, Inc., Westfield Insurance Co., and Henry Huffcutt Co., Inc., appeal a summary judgment of the trial court dismissing Up North Plastics, Inc. They argue that whether Up North had a duty to warn is a fact question for the jury. Because Huffcutt and Wieser failed to support their theory of causation, a requirement in a duty to warn case, we affirm the summary judgment.

## Background

¶ 2.   Nicholas and Nicole Schreiner reside on a dairy farm. They employed a horizontal bunker silo system to store silage. The silo system was made of components manufactured by Wieser and Huffcutt. Plastic sheeting manufactured and sold by Up North covered the silage stored in the silo system. When a new crop of silage was packed on top of an older crop of silage, it was the farm's policy to first remove the plastic layer. According to Nicholas Schreiner, in 1999, farm employees were responsible for removing the plastic layer.

¶ 3.   On December 3, 1999, silage collapsed on top of Schreiner when he was standing in front of the stacks, severely injuring him. At the time of the accident, there was a layer of silage on the top of the pile, sandwiched between two plastic sheets. Prior to the accident, silage stored in the bunker system reached a height one to two feet higher than the silo system could properly handle.

¶ 4.   Schreiner's brother arrived at the accident scene within minutes after the silage collapsed. He testified that a layer of silage at the top of the pile

sandwiched between two plastic sheets collapsed on Schreiner. Experts' opinions later supported the assertion that the presence of the plastic sheeting layer substantially contributed to the silage falling onto Schreiner.

¶ 5. Schreiner brought claims against Up North, based on its failure to provide sufficient operating instructions and warnings to advise the user to remove the plastic from the bunker silo system before adding a new layer of silage. Schreiner also contended Up North had a duty to warn about the safe use of silo systems generally.

¶ 6. Up North moved for summary judgment on the failure to warn claims. Schreiner did not oppose the motion. The trial court granted the motion, concluding that Schreiner's admission that it was his policy to remove the plastic sheeting layer before adding another layer of silage precluded a failure to warn claim. The court dismissed Schreiner's claims against Up North, as well as Wieser's crossclaim against Up North for indemnification and contribution. Wieser and Huffcutt appeal the dismissal of Up North.

## Standard of Review

¶ 7. We review summary judgment without deference, using the same methodology as the trial court. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 314–15, 401 N.W.2d 816 (1987). Summary judgment is appropriate when no material facts are in dispute and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08. Whether a manufacturer has a legal duty to warn users of dangers related to the use of its product is a question of law that we review without

837

deference. *Pomplun v. Rockwell Int'l Corp.*, 203 Wis. 2d 303, 307, 552 N.W.2d 632 (Ct. App. 1996).

## Discussion

¶ 8. Wieser contends whether warnings would have prevented the accident is a fact question for the jury and, therefore, the court erred when it granted summary judgment. There are three elements to a duty to warn claim: (1) existence of a duty to warn; (2) proof of a failure to warn adequately; and (3) proof of causation of injury. *See Kurer v. Parke, Davis, & Co.*, 2004 WI App 74, ¶ 24, 272 Wis. 2d 390, 679 N.W.2d 867. With its summary judgment, the trial court concluded there were disputed issues regarding the existence of a duty to warn and proof of failure to warn adequately. However, the trial court found that there was no issue of material fact regarding causation. "A plaintiff who has established both a duty and a failure to warn must also establish causation by showing that, if properly warned, he or she would have altered behavior and avoided injury." *Id.*, 25.

¶ 9. We agree with the trial court that summary judgment was appropriate, especially in this case when Schreiner did not oppose Up North's motion for summary judgment. Schreiner was an experienced farmer, and the party primarily responsible for operating a large dairy farm. For years before the accident, the farm had a policy of removing plastic sheets before adding more silage. The employees and hired hands were instructed to completely remove the plastic layer before putting on another layer of silage. Thus, the trial court concluded that the absence of a warning on the plastic

that directed a user to remove the plastic prior to adding more silage was not causal of Schreiner's injuries. In sum, the farm already had a policy to remove the plastic before adding silage, and therefore Schreiner already knew not to leave the plastic on the silage.

¶ 10.  Huffcutt and Wieser argue, however, that there is expert evidence the plastic contributed to the collapse of the silage. The trial court properly concluded the fact that there is evidence the plastic played some part in the collapse is not dispositive of whether the lack of warning on the plastic layer contributed to the accident. The court stated and we agree:

> [W]hether or not the plastic was a factor in the collapse does not really address whether or not Up North's breach of a duty to warn (assuming one existed) contributed to the plaintiff's injuries. . . . That evidence shows that the inclusion of a warning would not have prevented the accident, as was conceded by at least one of the opposing experts. Thus, the only conclusion that the evidence of record permits is that Up North's failure to include a warning was not a cause of Nicholas Schreiner's injuries.

The trial court referenced Wieser's expert John Johnson. Johnson was asked whether a warning on the plastic would have made a difference in this case, and he replied, "No, of course it wouldn't."

¶ 11.  Wieser argues that Schreiner might not have been the person who left the plastic sheeting in the silage layers, and the person who did leave the plastic might not have been aware of the policy to remove the plastic. Thus, the assertion is that a warning on the plastic may have prompted that person to act differently. However, Wieser does not provide evidence that this unknown person actually exists, that this

839

person was unaware of the farm's policy, and that he or she would have actually read the proposed warning on the plastic.

¶ 12. Further, Wieser's failure to support the preceding argument with evidence prevents it from barring summary judgment. WISCONSIN STAT. § 802.08 states:

> When a motion for summary judgment is made and supported as provided in this section, an adverse party may not rest upon the mere allegations or denials of the pleadings but the adverse party's response, by affidavits or as otherwise provided in this section, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against such party.

Thus, in response to a well-supported motion for summary judgment, "the opponent does not have the luxury of resting upon its mere allegation or denials of pleadings, but must advance specific facts showing the presence of a genuine issue for trial." *Moulas v. PBC Prods., Inc.*, 213 Wis. 2d 406, 411, 570 N.W.2d 739 (Ct. App. 1997). Here, Wieser has not provided the necessary support for its speculation, and summary judgment was appropriate.

¶ 13. To survive summary judgment, Wieser needed to present evidence to demonstrate causation regarding the lack of a warning on the plastic. As we stated in *Freer v. M&I Corp.*, 2004 WI App 201, ¶ 7, 276 Wis. 2d 721, 688 N.W.2d 756:

> In order to survive summary judgment, the party with the burden of proof on an element in the case must

840

establish that there is at least a genuine issue of fact on that element by submitting evidentiary material "set-[ting] forth specific facts," WIS. STAT. RULE 802.08(3), pertinent to that element. (Citation omitted.)

Further, "[t]he ultimate burden ... of demonstrating that there is sufficient evidence ... to go to trial at all" is on Wieser, "the party that has the burden of proof on the issue that is the object of the motion." *See Transportation Ins. Co. v. Hunzinger Const r . Co .*, 179 Wis. 2d 281, 290, 507 N.W.2d 136 (Ct. App. 1993). Due to the lack of evidence in the record regarding causation, the trial court did not err when it granted summary judgment.

■

¶ 14.   Next, Huffcutt contends that Up North had a duty to warn that silage should not be loaded more than one or two feet above the bunker wall. We disagree. The RESTATEMENT (THIRD) OF TORTS § 5 (1998), entitled "Liability of Commercial Seller or Distributor of Product Components for Harm Caused by Products Into Which Components are Integrated," states:

One engaged in the business of selling or otherwise distributing product components who sells or distributes a component is subject to liability for harm to persons or property caused by a product into which the component is integrated if:

(a) the component is defective in itself, as defined in this Chapter, and the defect causes the harm; or

(b)(1) the seller or distributor of the component substantially participates in the integration of the component into the design of the product; and

(2) the integration of the component causes the product to be defective, as defined in this Chapter; and

841

(3) the defect in the product causes the harm.

For Up North, a component manufacturer, to be held liable for the accident in the bunker system: (1) the plastic sheeting must have been defective and caused Schreiner's injuries; or (2) Up North must have substantially participated in integrating the plastic sheet into the silo system and that integration caused the silo system to be defective, which in turn caused the injuries to Schreiner.

¶ 15. We conclude that Up North had no duty to warn regarding the proper height to stack the silage. No party argues that the plastic sheeting was in any way defective. Also, no party contends that Up North participated in integrating the plastic sheeting into the silo system. Therefore, Up North had no duty to warn regarding general safe use of the silo system.

¶ 16. We agree with Up North that although Wisconsin has not previously adopted RESTATEMENT (THIRD) OF TORTS § 5, it is consistent with Wisconsin law. Our courts have previously declined to impose a duty to warn on a component manufacturer regarding the dangerous or defective product manufactured by another. For example, in *Pomplun*, 203 Wis. 2d at 308–09, the court declined to impose a duty to warn upon the manufacturer of a foot switch product against potential hazards in the use of the switch in a punch press that injured the plaintiff. In *Shawver v. Roberts Corp.*, 90 Wis. 2d 672, 685–86, 280 N.W.2d 226 (1979), the Court declined to impose a duty to warn upon the manufacturer of a conveyer product when the conveyer was not defective. There, the control system was defective and the conveyer manufacturer had no involvement in the design and location of the controls.

¶ 17. Our holding is consistent with other jurisdictions which have held that an ancillary component manufacturer has no duty to warn regarding the dangers associated with a separate manufacturer's defective products. For example in *Acoba v. General Tire, Inc.*, 986 P.2d 288, 305 (Haw. 1999), the court held as a matter of law that a tire manufacturer and an inner tube manufacturer had no duty to warn a plaintiff about the dangers in a rim they did not manufacture. *See also Reynolds v. Bridgestone/Firestone, Inc.*, 989 F.2d 465, 472 (11th Cir. 1993); *Walton v. Harnishfeger*, 796 S.W.2d 225, 226 (Tex. Ct. App. 1990). Thus, other courts have held a manufacturer only owes a duty to warn regarding its own products, not products it did not manufacture, sell or otherwise place in the stream of commerce. *See, e.g., Acoba*, 986 P.2d at 305.

*By the Court.*—Judgment affirmed.