COURT OF APPEALS
DECISION
DATED AND FILED

June 13, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1454**

Cir. Ct. No. 2019CV8293

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

BEVERLY ANN GLADNEY,

PLAINTIFF-APPELLANT,

V.

LONDON SQUARE APARTMENT HOMES LLC AND
GORMAN & COMPANY, INC.,

DEFENDANTS-RESPONDENTS.

APPEAL from an order of the circuit court for Milwaukee County: DAVID C. SWANSON, Judge. *Affirmed.*

Before Brash, C.J., Dugan and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Beverly Ann Gladney, *pro se*, appeals from an order of the circuit court that granted summary judgment to the defendants-respondents and dismissed her claim. The circuit court determined that Gladney needed an expert witness to support her personal injury claim, and because she had not named one, there was insufficient proof to survive summary judgment. We affirm the order.

¶2 Gladney "became a new tenant" at Lindsay Commons Apartments in March 2016.[1] She "had not quite moved in, when after a short period of spending time at the apartment, [she] become [sic] increasingly ill." In June 2016, Gladney alleges, "there was black toxic mold discovered" in her apartment, which caused her to suffer "severe swelling in body/extremities, cognitive issues, respiratory distress, neurological problems, etc." Gladney also claimed the mold caused property damage, requiring her "to dispose of a lot of [her] material possessions (clothing, etc.) and food items[.]" She acknowledged that "[o]nce management became aware of the mold issue … they cleaned up the mold," but said that management subsequently "denied that [mold] was ever present." On August 31, 2016, Gladney received a "termination of lease agreement/notice to vacate."[2]

¶3 On October 28, 2019, Gladney filed the initial complaint in this case, seeking $10,000 for property damage, $200,000 in punitive damages, $200,000 in compensatory damages, $750,000 for emotional distress and mental anguish, and

---

[1] Neither the pleadings nor the briefs specify the relationship between Lindsay Commons Apartment and the named defendants, London Square Apartment Homes LLC and Gorman & Company, Inc., but it appears the companies are management and ownership, respectively.

[2] There is no allegation that this was a retaliatory eviction; Gladney was apparently in violation of a term of the lease that required her to live in the apartment and use it as her exclusive residence, although Gladney claimed the apartment was uninhabitable due to the mold.

$3 million for pain and suffering. In an amended complaint filed in November 2020, Gladney requested damages of "$300 million, for pain and suffering (physical, mental, emotional [and] psychological), property damage, punitive damages, compensatory damages, mental anguish and emotional distress."

¶4 A scheduling order entered on September 24, 2020, set deadlines by which parties were required to disclose their witnesses, including experts. Gladney's deadline was January 8, 2021, and she identified only lay witnesses. Her witness list specifically stated, "Currently, I do not have an expert witness who will give an expert opinion at trial."

¶5 On April 9, 2021, defendants moved for summary judgment. The motion asserted that this is a "toxic tort" case, for which expert testimony on causation is required, and because Gladney had not named any experts, her claim should be dismissed. The motion also asserted that any claim for damages that were incurred prior to October 28, 2016, were barred by the three-year statute of limitations. The parties briefed the motion, and the circuit court held a hearing on June 24, 2021. After hearing the parties' arguments, the circuit court granted the motion "for the reasons stated on the record"[3] and dismissed Gladney's claims. Gladney appeals.

¶6 "We review summary judgment motions de novo, applying the same methodology as the circuit court." *Brown v. Schwartz*, 2012 WI App 66, ¶5, 342 Wis. 2d 236, 815 N.W.2d 719. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together

---

[3] The transcript of the motion hearing is not in the record; Gladney's statement on transcript indicates her determination that a transcript "is not necessary" for this appeal.

3

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2) (2021-22).[4]

¶7 "[W]e look at the parties' submissions in a light most favorable to the party against whom summary judgment is sought, and all reasonable inferences are to be assessed against the party seeking summary judgment." *See Novell v. Migliaccio*, 2010 WI App 67, ¶9, 325 Wis. 2d 230, 783 N.W.2d 897. When the plaintiff's complaint states a claim for relief, a court examines the moving party's submissions to determine whether that party made a prima facie case for summary judgment. *See Gross v. Woodman's Food Mkt., Inc.*, 2002 WI App 295, ¶30, 259 Wis. 2d 181, 655 N.W.2d 718. If so, the court examines the opposing party's submissions to determine whether material facts are in dispute requiring a trial. *See id.* The ultimate burden of demonstrating that there is sufficient evidence to go to trial at all is on the party with the burden of proof on the issue that is the subject of the motion. *See Schreiner v. Wieser Concrete Prods., Inc.*, 2006 WI App 138, ¶13, 294 Wis. 2d 832, 720 N.W.2d 525.

¶8 In this case, Gladney alleged that she suffered a variety of physical symptoms due to exposure to toxic black mold in her apartment. In seeking summary judgment, the defendants-respondents did not suggest that Gladney failed to state claims for relief. Rather, they asserted that Gladney's failure to name an expert meant there was insufficient proof on the causation elements of

---

[4] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

her claims. In support, defendants-respondents submitted a copy of Gladney's witness list which, as noted, specifically states that Gladney has no expert witness.

¶9     A party must present expert testimony when the issues are "so complex or technical that a jury without the assistance of expert testimony would be speculating." *See Cramer v. Theda Clark Mem'l Hosp.*, 45 Wis. 2d 147, 152, 172 N.W.2d 427 (1969); *see also Pinter v. Vill. of Stetsonville*, 2019 WI 74, ¶63, 387 Wis. 2d 475, 929 N.W.2d 547 (citation omitted) (expert testimony is required to prove causation where "the matter is not within the realm of ordinary experience and lay comprehension"); *State v. Whitaker*, 167 Wis. 2d 247, 255, 481 N.W.2d 649 (Ct. App. 1992) (expert testimony required "if the issue to be decided by the jury is beyond the general knowledge and experience of the average juror."). Defendants-respondents contend that causation in a mold case has two prongs: general causation, which is whether a substance is capable of causing a particular injury, and specific causation, whether the substance caused plaintiff's injuries. They further contend that causation in a mold case is not within common knowledge, so expert testimony is required.

¶10    There is no published Wisconsin case dealing with expert requirements specifically in black mold cases. However, Wisconsin law does indicate that a party may not maintain a lawsuit alleging injury caused by toxic exposure without a qualified physician to support the claim. *See Jandrt ex rel. Brueggeman v. Jerome Foods, Inc.*, 227 Wis. 2d 531, 562-74, 597 N.W.2d 744 (1999); *see also Kolesar v. United Agri Prods., Inc.*, 412 F. Supp. 2d 686, 696 (W.D. Mich. 2006) (discussing Wisconsin law, including *Jandrt*); *see also Ramsden v. AgriBank, FCB*, 63 F. Supp. 2d 958, 961 (W.D. Wis. 1999) (explaining that "Wisconsin law requires expert testimony to establish causation when toxic exposures are involved"), *vacated on other grounds*, 214 F.3d 865 (7th

Cir. 2000).  "When expert testimony is required and is lacking, the evidence is insufficient to support a claim."  ***Kinnick v. Schierl, Inc.***, 197 Wis. 2d 855, 862, 541 N.W.2d 803 (Ct. App. 1995).

¶11    In her brief, Gladney states that "[d]ue to circumstances that were totally beyond [her] control," i.e., the COVID-19 pandemic, she was "unable to obtain an expert (who would testify in this case)."  However, this explanation is insufficient to absolve Gladney of the need for an expert.  Gladney alleged that the mold was discovered in her apartment in June 2016, nearly four years before the March 2020 declaration of any public health emergency.[5]  One of Gladney's exhibits within her brief—an air quality evaluation—was dated September 2016. Gladney filed her suit in October 2019, five months before the start of the pandemic.  Further, Gladney had commenced a different black mold case in June 2018.  *See **Gladney v. LaQuinta Inns & Suites***, No. 2020AP900, unpublished op. and order (WI App Jan. 11, 2022).  Four days before Gladney filed this case, the defendant hotel moved for summary judgment based on Gladney's failure to secure an expert; the case was dismissed in February 2020.  Gladney had more than ample notice and opportunity prior to the COVID-19 pandemic to seek an expert witness to support her claims.

¶12    Gladney also asserts in her reply brief that she herself qualifies as an expert witness because she has "firsthand experience in dealing with black toxic mold," through which she says she has "gained a tremendous amount of knowledge and became educated about black toxic mold, by reading, and

---

[5] *See **Wisconsin Legislature v. Palm***, 2020 WI 42, ¶5, 391 Wis. 2d 497, 942 N.W.2d 900 ("[O]n March 12, 2020, Governor Evers issued Executive Order 72 'Declaring a Health Emergency in Response to the COVID-19 Coronavirus.'")

research." *See*, *e.g.*, WIS. STAT. § 907.02(1) (permitting opinion testimony from "a witness qualified as an expert by knowledge, skill, experience, training, or education"). Relying on ***Karl v. Employers Ins. of Wausau***, 78 Wis. 2d 284, 254 N.W.2d 255 (1977), she asserts that "qualification of an expert has historically been a matter not of licensure, but of experience."

¶13    Gladney's claims of expertise are entirely conclusory. Moreover, there are actually three prerequisites to the admission of expert testimony:

> the witness must be qualified ("a witness qualified as an expert by knowledge, skill, experience, training, or education"); the witness's testimony must be relevant ("[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue"); and, per the 2011 amendment adopting the ***Daubert*** [***v. Merrell Dow Pharms., Inc.***, 509 U.S. 579 (1993)] standard, the witness's testimony must be reliable ("if the testimony is based upon sufficient facts or data, the testimony is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case").

***State v. Hogan***, 2021 WI App 24, ¶¶1819, 397 Wis. 2d 171, 959 N.W.2d 658. Gladney does not analyze her "expert" testimony or qualifications under this framework, nor does she show that she did so in the circuit court.[6] Even assuming without deciding that Gladney could qualify as an "expert," she did not disclose herself as such as required by the scheduling order. We also typically do not consider arguments raised for the first time on appeal, *see **State Farm Mut. Auto. Ins. Co. v. Hunt***, 2014 WI App 115, ¶32, 358 Wis. 2d 379, 856 N.W.2d

---

[6] Because there is no transcript of the motion hearing, we must assume either that this argument was not made to the circuit court or, if it was made, that the circuit court properly rejected it. *See **Austin v. Ford Motor Co.***, 86 Wis. 2d 628, 641, 273 N.W.2d 233 (1979); *see also **State v. Hogan***, 2021 WI App 24, ¶26, 397 Wis. 2d 171, 959 N.W.2d 658 (appellate review of the trial court's decisions regarding the admission of expert testimony remains deferential).

633, nor those raised for the first time in a reply brief, *see **A.O. Smith Corp. v. Allstate Ins. Cos.**,* 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998).

¶14 Gladney also suggests in her reply brief that oral argument in this matter is "imperative, therefore leaving the decision to the court to decide and determine whether or not causation has been established in this case." However, the time to establish sufficient evidence of causation to survive summary judgment and go to trial has passed. The circuit court properly granted summary judgment in defendants-respondents' favor and dismissed Gladney's case.[7]

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[7] Because we concluded that the circuit court properly dismissed all of Gladney's claims, we decline to address whether and which claims might be barred by the statute of limitations. *See Maryland Arms Ltd. P'ship v. Connell*, 2010 WI 64, ¶48, 326 Wis. 2d 300, 786 N.W.2d 15 ("Typically, an appellate court should decide cases on the narrowest possible grounds.").