SCANDRETT and others, Trustees (CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD COMPANY), Appellants, vs. GREENHOUSE, Respondent.

*October 13—November 9, 1943.*

*Werner J. Trimborn* of Milwaukee, for the appellants.
*Harry M. Silber* of Milwaukee, for the respondent.

ROSENBERRY, C. J.  Some time prior to the 9th day of October, 1941, Delmar Kelley by his attorney, William Green-

house, commenced an action for personal injuries in the circuit court for Milwaukee county against the trustees of the property of the Chicago, Milwaukee, St. Paul & Pacific Railroad Company. In due course the case was assigned to the conciliation branch of the court presided over by DANIEL W. SULLIVAN, judge. There is a dispute between the parties as to what occurred at the conciliation meeting on October 9, 1941. Upon that question the civil court found in favor of the plaintiff's version and that finding was not disturbed by the circuit court on review.

The facts as claimed by the plaintiff are as follows: The conciliation meeting was attended by Rodger M. Trump, Esq., for the defendants in that suit and by William Greenhouse, Esq., for the plaintiff in that suit. It appeared after a discussion of the plaintiff's claim for damages that the compensation carrier, the Liberty Mutual Insurance Company, had an interest in the plaintiff's claim. The amount of that interest was $41.20. The plaintiff demanded $300 and the defendants offered $200. Judge SULLIVAN made the following note:

"I suggest $250, William Greenhouse $300; Greenhouse will accept $250 if 'comp' carrier will consent."

Judge SULLIVAN further noted: "Case settled October 9th." Counsel stated defendants would pay $250 and no more.

Mr. Greenhouse for the plaintiff in that action then stated that he would take up the matter with the compensation carrier. On the next day Mr. Greenhouse presented the release of the plaintiff Kelley at the office of the attorney for the defendant trustees and obtained a check for $250 in settlement of the case. Nothing further was said as to the consent of the compensation carrier to the settlement, counsel for the trustees assuming that the compensation carrier had been or would be paid when Mr. Greenhouse received the money and accepted the $250 in accordance with the terms of the settlement. It appeared subsequently that Mr. Greenhouse had not procured the consent of the compensation carrier or paid the claim for

$41.20 of the compensation carrier. The trustees paid this claim upon demand and then made claim upon Mr. Greenhouse for reimbursement which was denied. Thereupon this suit was begun by the plaintiffs in this action, the defendants in the first action, against Delmar Kelley and William Greenhouse for the recovery of the said sum of $41.20. Service could not be made upon Kelley and the suit proceeded against William Greenhouse alone.

The trial in the civil court is a summary proceeding. The plaintiffs filed a complaint in which the facts were set out substantially as outlined. The defendant filed no answer but demurred *ore tenus* to the plaintiffs' complaint. At the close of the testimony the civil court found that the defendant was indebted to the plaintiffs in the sum of $41.20 and judgment was entered accordingly. No formal findings were made.

On appeal the circuit court in its opinion made the following statement:

"In view of the fact that the trial court ordered judgment for the plaintiffs, it must be assumed that he found against defendant Greenhouse with respect to the contention that payment of the $41.20 was waived by the railroad company. However, in order to sustain the judgment of the civil court, it must be made to appear that defendant Greenhouse undertook to personally make the payment to the compensation carrier or that he acted fraudulently in making payment of the full amount to his client without first paying the compensation carrier.

"Plaintiffs' complaint does not allege fraud or is it contended in plaintiffs' brief that defendant Greenhouse acted fraudulently. . . .

"It does not appear in the evidence that defendant Greenhouse still has the money in his possession."

The court concluded:

"Failure to show either fraud or an express undertaking by defendant Greenhouse personally is fatal to plaintiffs' cause of action."

It is considered that the court's conclusion rests upon a mistake of law. While it is true, as the court indicated, that an attorney is not ordinarily liable to third persons for his acts committed in the exercise of his proper functions as attorney concerning the subject matter of his agency, to this rule, however, there are a number of exceptions.

"The relation of attorney and client in its general features is that of principal and agent and is governed by the same rules which are applicable to other agencies." *Ryan v. Department of Taxation* (1943), 242 Wis. 491, 496, 8 N. W. (2d) 393.

In *Wright v. Eaton* (1859), 7 Wis. *595, *608, it was held that—

"The fact that the claimant obtained this money (for which judgment sought to be enjoined was rendered) as an agent, if wrongfully obtained, cannot absolve him from his liability to the person from whom it was thus wrongfully obtained, although he had paid it over to his principal." Citing cases.

*Wright v. Eaton, supra,* was affirmed in *Blizzard v. Brown* (1913), 152 Wis. 160, 139 N. W. 737. In that case one Mary Kelly, by her attorney, Charles N. Brown, recovered a judgment in justice court against Blizzard. Judgment was also rendered in the garnishment case in favor of Mary Kelly. The garnishee paid the amount of the judgment into justice court. Blizzard appealed from the judgment of the justice court to the circuit court without *supersedeas* bond, Mary Kelly's attorney notified Blizzard's attorney that unless a settlement was made he would collect the money paid to the justice by the garnishee and pay the same over to his client Mary Kelly, who was insolvent. The attorney for Blizzard thereupon notified the defendant that if he did this he would do so at his peril, and requested him to permit the deposit to remain with the justice awaiting the outcome of the appeal. Before the appeal was heard Brown collected the money and paid it to his client.

Brown knew at all times that Mary Kelly was insolvent and in no position to restore the money collected on the garnishment judgment. It was held that because the agent Brown had notice he was personally liable to the plaintiff Blizzard for the amount of money thus paid over by him to his client. See also 37 C. J. p. 225, sec. 9, note—Agent's liability for money turned over to a principal who is not entitled thereto, 82 A. L. R. 307.

When the defendant in this case presented the release and demanded payment of $250, which was to be paid only upon condition that the compensation carrier consented thereto, that is, waived its claim, the defendant Greenhouse thereby represented that the claim of the compensation carrier had been satisfied or waived and received the money in full settlement of all claims against the defendants in that action, the plaintiffs in this action, as stated in the release.

It is not necessary for a person to make oral misrepresentation of fact in order to be guilty of fraudulent conduct,—such representations may be made by the acts or conduct of the party. The rule is stated in 1 Bigelow, Fraud, p. 467:

"Any conduct capable of being turned into a statement of fact is a representation. There is no distinction between misrepresentations effected by words and misrepresentations effected by other acts." See *Leonard v. Springer* (1902), 197 Ill. 532, 64 N. E. 299.

In *Swift v. Rounds* (1896), 19 R. I. 527, 35 Atl. 45, 33 L. R. A. 561, the defendant had purchased goods on credit intending not to pay for them. The court held that the defendant was liable in the action for deceit. The court said (p. 562):

"A man may not only deceive another to his hurt by deliberately asserting a falsehood, as, for instance, by stating that A is an honest man when he knows him to be a rogue, or that a horse is sound and kind when he knows him to be unsound

and vicious, *but also by any act or demeanor which would naturally impress the mind of a careful man with a mistaken belief, and form the basis of some change of position by him.*"

That the counsel for the plaintiffs in this action in accepting the release under the circumstances relied upon representation by the conduct of the defendant, appears as a matter of law. The conduct of the defendant, although he acted as agent and attorney of Kelley, need not to be characterized by so harsh a term as fraud. It was certainly wrongful. By reason of the defendant's wrongful conduct the plaintiffs were obliged to pay the amount for which recovery was allowed in civil court in excess of the agreed settlement, and while it does not appear that the defendant now has or had the money, nevertheless the wrong committed by him was his·own wrong and he is liable for the legal consequences of his act even though the act was for the benefit of his client. He is not saved from liability because in the commission of the wrongful act he acted as agent for another.

*By the Court.*—The judgment appealed from is reversed, and cause remanded with directions to the trial court to enter judgment for the plaintiffs for the amount of their damages and costs.