Chad Novell,
Plaintiff-Appellant,

v.

Anthony Migliaccio and Andrea Migliaccio,
Defendants-Respondents.

Court of Appeals

*No. 2009AP1576. Submitted on Briefs April 1, 2010.
—Decided April 27, 2010*

2010 WI App 67

(Also reported in 783 N.W.2d 897.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Daniel W. Stevens* and *Rudolph J. Kuss* of *Law Office of Daniel W. Stevens*, Brookfield.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Joseph J. Welcenbach* of *Welcenbach Law Offices, S.C.*, Milwaukee.

Before Curley, P.J., Fine and Brennan, JJ.

¶ 1. FINE, J. Chad Novell appeals the circuit court's order granting summary judgment to Anthony and Andrea Migliaccio dismissing Novell's complaint seeking to recover under WIS. STAT. § 100.18(1) in connection with Novell's purchase of a home from the Migliaccios. This is a leaky-basement case and has been through the court system already. *See Novell v. Migliaccio*, 2008 WI 44, ¶ 1, 309 Wis. 2d 132, 136, 749 N.W.2d 544, 545–546. The only issue on this appeal is whether painting a basement wall can be a misrepresentation under § 100.18(1) if a jury believes that the painting was done to hide evidence that the basement leaked. We hold that it can and that there are genuine issues of material fact whether the Migliaccios painted their basement and, if so, thus misrepresented the basement's condition. Accordingly, we reverse and remand for trial.

## I.

¶ 2. WISCONSIN STAT. § 100.18(1) declares, as material here:

> No person . . . with intent to sell . . . real estate . . . shall make . . . [a] statement or representation of any kind to the public relating to such . . . sale . . . of such real estate . . . or to the terms or conditions thereof, which . . . statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading.[1]

---

[1] WISCONSIN STAT. § 100.18(11)(b)2. permits the victim of a § 100.18(1) violation to sue, and, as material, reads: "Any person suffering pecuniary loss because of a violation of this section by any other person may sue in any court of competent

232

Section 100.18(1) only applies to statements or representations in connection with real-estate sales if those statements or representations were made before the seller's acceptance of the purchaser's offer to purchase because "statements made to the other party to a contract" after the contract is formed "are not statements made 'to the public.' " *Kailin v. Armstrong*, 2002 WI App 70, ¶¶ 2, 43–45, 252 Wis. 2d 676, 684, 709–710, 643 N.W.2d 132, 137, 149. Here, Novell signed the offer to purchase on June 26, 2003, and the Migliaccios accepted the offer on June 30, 2003. We restrict our discussion accordingly.

¶ 3. After the Migliaccios accepted Novell's offer to purchase, they gave him a property-condition report signed August 25, 2003, which represented that they were not "aware" of "defects in the basement or foundation," which included, among other things, "cracks, seepage and bulges" and that "might include, but are not limited to, flooding, extreme dampness or wet walls." (Some italics omitted.) *See* Wis. Stat. §§ 709.02, 709.03. As noted, this representation cannot be a basis for liability under Wis. Stat. § 100.18(1) because it was made after the Migliaccios accepted Novell's offer to purchase. The report indicated that the Migliaccios had as of August of 2003 lived in the house for nine years.

¶ 4. Novell had the home inspected after the Migliaccios accepted his offer to purchase. The inspection showed, according to the inspector's report, "moisture" and "water stains" in the basement. There is no dispute in the Record that the basement leaked after Novell moved in.

---

jurisdiction and shall recover such pecuniary loss, together with costs, including reasonable attorney fees."

¶ 5. Novell testified at his deposition that he walked through the house and basement in June of 2003 before he formally offered to buy the property. He also testified that the basement was important because he "was planning to use the basement as a recording studio" and that he "informed Mr. Migliaccio of that at that time."

¶ 6. Novell also submitted to the circuit court an affidavit averring, as material to this appeal, that:

- In deciding to buy the house, he relied "on the pristine appearance of the basement walls";

- The basement's condition was "critically important" because he "planned on using the great room in the basement as a recording studio" for his band;

- "[O]n numerous occasions before I submitted my Offer, I informed the Defendant Anthony Migliaccio of my planned use for the basement";

- "[O]n numerous occasions before I submitted my Offer, Mr. Migliaccio represented to me that he had not painted the property's basement walls during his ownership";

- "[W]ater has leaked from the basement walls that Mr. Migliaccio denied painting";

- Novell "discovered a half full, one gallon can of KILZ waterproofing paint in my basement";

- The KILZ "paint can has a copyright date of 2000, which means that it must have been manufactured and sold no earlier than 2000."

¶ 7. Anthony Migliaccio testified at his deposition that he did not "recall" telling Novell that the basement had never leaked during the time he owned the house.

234

He also testified that he "did not paint the basement walls." As for the KILZ waterproofing paint, he testified: "I really don't know what that Kilz paint — I don't know what it was, I don't remember buying it, I'm not sure what we used it for." He later testified at his deposition that he might have used the paint to "paint[] over" some "dog paw prints" in an upstairs bedroom, explaining "[w]ith Kilz, because with Kilz, it's for covering stains. We painted other rooms upstairs."

¶ 8. In granting summary judgment to the Migliaccios on Novell's claim under WIS. STAT. § 100.18, the circuit court opined that "painting of a wall cannot be deemed a representation to the public," and, also, that Novell "provides no evidence that the defendant painted the basement walls," noting that "[t]he paint can discovered by the plaintiff was explained by the defendant under oath as being used in the upstairs area of the house" and that Novell "submitted no evidence to refute this."

## II.

██

¶ 9. A court may only grant summary judgment if "there is no genuine issue as to any material fact" and a party "is entitled to a judgment as a matter of law." WIS. STAT. RULE 802.08(2). We review *de novo* a circuit court's rulings on summary judgment, and apply the governing standards "just as the trial court applied those standards." *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–317, 401 N.W.2d 816, 820–821 (1987). Further, we look at the parties' submissions in a light most favorable to the party against whom summary judgment is sought, *Johnson v. Rogers Mem'l Hosp., Inc.*, 2005 WI 114, ¶ 30, 283 Wis. 2d 384, 401, 700 N.W.2d 27, 35, and

all reasonable inferences are to be assessed against the party seeking summary judgment, *Lecus v. American Mut. Ins. Co. of Boston*, 81 Wis. 2d 183, 189–190, 260 N.W.2d 241, 244 (1977). *Lecus* recites the familiar standard:

> The question upon review of an order granting a motion for summary judgment is not necessarily whether the inferences that have been drawn are reasonable but whether the record reveals there are competing inferences that could be considered reasonable. We have no quarrel with the inferences drawn by the trial court nor the findings of fact it did make, but that is not the function of a motion for summary judgment. We have stated innumerable times a motion for summary judgment does not contemplate nor permit a trial upon affidavits or depositions, and that if there are any material facts in dispute or competing reasonable inferences the party resisting the motion is entitled to a trial.

*Ibid.* As we show below, this caveat applies to the circuit court's erroneous grant of summary judgment here.

██

¶ 10. The circuit court recognized that the crux of this case is whether painting a basement wall can be a "representation" under Wis. Stat. § 100.18(1). Although there are no cases that have decided whether an act, as opposed to an oral or written verbal assertion, can be a "representation" as that word is used in § 100.18(1), there are analogous decisions that help light our way. For example, *Scandrett v. Greenhouse*, 244 Wis. 108, 11 N.W.2d 510 (1943), held that payment by a lawyer to his client of money collected from the defendants in the client's personal-injury action was the lawyer's representation that he had reimbursed the plaintiff's compensation carrier even though the lawyer never as-

serted that he had satisfied the carrier's claim. *Id.*, 244 Wis. at 113–114, 11 N.W.2d at 512. *Scandrett* recognizes the commonsense rule:

> It is not necessary for a person to make oral misrepresentation of fact in order to be guilty of fraudulent conduct,—such representations may be made by the acts or conduct of the party. The rule is stated in 1 Bigelow, Fraud p. 467: "Any conduct capable of being turned into a statement of fact is a representation. There is no distinction between misrepresentations effected by words and misrepresentations effected by other acts."

*Id.*, 244 Wis. at 113, 11 N.W.2d at 512.

¶ 11. The *Scandrett* rule has been recently reaffirmed by *John Doe 1 v. Archdiocese of Milwaukee*, 2007 WI 95, ¶¶ 42, 44, 303 Wis. 2d 34, 63–65, 734 N.W.2d 827, 840–841 ("[A]cts can constitute representations of fact.") (Assigning priests to parishes where they would have "unsupervised access to children" was, for purposes of the plaintiffs' complaint, "sufficient to constitute an affirmative representation" that the Archdiocese did not know that the priests were pedophiles.). Significantly, according to a student of consumer protection in Wisconsin, WIS. STAT. § 100.18 "was originally enacted in 1913 to prohibit untrue, deceptive or misleading 'advertisements.' However, the statute was expanded in 1945 to cover any 'advertisement, announcement, statement or *representation*' to the public." James D. Jeffries, *Protection for Consumers Against Unfair and Deceptive Business Practices in Wisconsin*, 57 MARQ. L. REV. 559, 561 (1974), *available at http://epublications.marquette.edu/mulr/vol57/iss4/1* (emphasis added; footnotes omitted). The 1945 amend-

237

ment is significant because it came shortly after *Scandrett* held that representations could be made by nonverbal acts, and "[w]e presume that the legislature acts with full knowledge of existing case law when it enacts a statute." *See State v. Grady*, 2006 WI App 188, ¶ 9, 296 Wis. 2d 295, 300, 722 N.W.2d 760, 763, *aff'd*, 2007 WI 81, 302 Wis. 2d 80, 734 N.W.2d 364. Moreover, if the use of "representation" in § 100.18 meant nothing more than "statement," it would be superfluous and we are enjoined not to read a "statute that results in words being superfluous." *Wisconsin Dep't of Revenue v. River City Refuse Removal, Inc.*, 2007 WI 27, ¶ 45, 299 Wis. 2d 561, 584, 729 N.W.2d 396, 407. A reasonable jury could thus find that painting over evidence of a leaky basement was a "representation" that the basement did not leak. We now turn to whether there is a dispute whether the Migliaccios (1) painted the basement, and, if so, whether (2) a reasonable jury could conclude that they did so to represent that the basement did not leak.

¶ 12. A jury could reasonably find that, as Novell averred in his affidavit, he found a half-full gallon can of waterproofing paint in the basement and that the paint was sold no earlier than 2000. Further, the jury could also reasonably conclude that the paint belonged to the Migliaccios because they lived in the house for the nine years preceding 2003. Although the circuit court believed Anthony Migliaccio's testimony that he used the paint for an upstairs bedroom, courts may not make findings of fact on summary judgment; credibility assessments must be made at trial and not on summary judgment. *See Lecus*, 81 Wis. 2d at 189–190, 260 N.W.2d at 244.

¶ 13. If a jury determines that the Migliaccios painted the basement even though they deny having done so, it could reasonably conclude that they used the

waterproofing paint to hide evidence that the basement leaked. Thus, we reverse the circuit court's grant of summary judgment.[2]

---

[2] The Migliaccios contend that Novell's averment in his affidavit that "on numerous occasions before I submitted my Offer, Mr. Migliaccio represented to me that he had not painted the property's basement walls during his ownership" contradicts his deposition testimony and thus should be disregarded as a "sham affidavit." *See Yahnke v. Carson*, 2000 WI 74, ¶¶ 20–21, 236 Wis. 2d 257, 270–271, 613 N.W.2d 102, 108–109 ("[A]n affidavit that directly contradicts prior deposition testimony is generally insufficient to create a genuine issue of fact for trial, unless the contradiction is adequately explained."). They point to the following excerpt from Novell's deposition testimony:

> Q So then the first time Mr. Migliaccio and his wife would have misrepresented to you would have been with the Real Estate Condition Report August 26th of '03, correct — August 25th of '03; is that correct?
>
> A Yes.

The focus of this question and answer, however, was on the Real Estate Condition Report, which did not address whether the basement walls were painted or not painted. As we have seen, the alleged "misrepresentation" in the Real Estate Condition Report was the report's assertion that the Migliaccios were not aware of any basement problems. Thus, although there was an overlap (painting the basement with waterproofing paint would tend to be evidence of an awareness that the basement had water problems), the question asked did not hone in on whether the Migliaccios had, in fact, told Novell that they had not painted the walls and, if they did tell him that, when. In light of this, the "directly contradicts" test adopted by *Yahnke* does not apply. *Cf. Bronston v. United States*, 409 U.S. 352, 358–362 (1973) (perjury may not rest on non-responsive answers to imprecise questions). Moreover, as we have discussed in the main body of this opinion, a reasonable jury could find that: (1) the Migliaccios painted the basement with the waterproof paint, and (2) the painting was done to misrepresent whether the basement leaked. Thus, the

*By the Court.*—Order reversed.

averment in Novell's affidavit that Mr. Migliaccio told him before June 26, 2003, that he had never painted the basement is not material; the Migliaccios do not dispute Novell's averment that he bought the house because of "the pristine appearance of the basement walls," although, of course, a jury could disbelieve that assertion.