MBS-Certified Public Accountants, LLC
and Thomas H. Schmitt, CPA, d/b/a
Metropolitan Business Services,
Plaintiffs-Appellants-Cross-Respondents,

v.

Wisconsin Bell Inc., d/b/a AT&T Wisconsin,
Defendant-Respondent,

ILD Telecommunications, Inc., d/b/a
ILD Teleservices, Americatel Corporation
and Local Biz USA, Inc.,
Defendants-Respondents-Cross-Appellants,

US Connect, LLC, Defendant.

Court of Appeals

*No. 2008AP1830. Submitted on briefs November 6, 2012.
—Decided January 23, 2013.*

2013 WI App 14

(Also reported in 828 N.W.2d 575.)

174

On behalf of the plaintiffs-appellants-cross-respondents, the cause was submitted on the briefs of *Douglas P. Dehler* of *Shepherd, Finkelman, Miller & Shah, LLP*, of Milwaukee, and *James C. Shah* of *Shepherd, Finkelman, Miller & Shah, LLP* of Media, Pennsylvania; and *James E. Miller* of *Shepherd, Finkelman, Miller & Shah, LLP*, of Chester, Connecticut.

On behalf of defendant-respondent Wisconsin Bell Corporation, the cause was submitted on the briefs of *Paul F. Linn, Ted A. Wisnefski*, and *Joan M. Huffman* of *Michael Best & Friedrich, LLP*, of Milwaukee.

On behalf of defendant-respondent-cross-appellant ILD Telecommunications, Inc., the cause was submitted on the briefs of *Robert H. Friebert* and *Christopher M. Meuler* of *Friebert, Finerty & St. John, S.C.*, of Milwaukee, and *Gregory F. Harley* of *Burr & Forman, LLP*, of Atlanta, Georgia.

On behalf of defendant-respondent-cross-appellant Americatel Corporation, the cause was submitted on the briefs of *Paul F. Heaton, Ralph A. Weber*, and *David J. Turek* of *Gass, Weber, Mullins LLC*, of Milwaukee.

On behalf of defendant-respondent-cross-appellant Local Biz USA, Inc., the cause was submitted on the briefs of *David V. Meany* and *Steven A. DiTullio* of *DeWitt, Ross & Stevens, S.C.*, of Brookfield.

Before Curley, P.J., Brennan and Lundsten, JJ.

¶ 1. CURLEY, P.J. This appeal is before us on remand from the supreme court. MBS-Certified Public Accountants, LLC and Thomas H. Schmitt, CPA, d/b/a Metropolitan Business Services (unless otherwise specified, collectively referred to as "MBS," using the singular pronoun "it") initially appealed the trial court's order dismissing a number of claims—including claims made pursuant to the anti-"cramming" statute, WIS. STAT. § 100.207 (2009–10)[1]—against Wisconsin Bell Inc., ILD Communications, Inc., Americatel Corp., and Local Biz USA, Inc., (unless otherwise specified, collectively referred to as "defendants") and ILD cross-appealed. On

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

appeal, we concluded, as did the trial court below, that the voluntary payment doctrine precluded MBS's claims. *See MBS-Certified Public Accountants, LLC v. Wisconsin Bell, Inc.*, 2010 WI App 135, ¶ 1, 329 Wis. 2d 709, 790 N.W.2d 542 (unpublished) (*"MBS I"*). We further concluded that, because the voluntary payment doctrine precluded MBS's claims, we did not need to address ILD's cross-appeal, nor did we need to address the parties' additional arguments regarding the efficacy of the trial court's order. *See id.*, ¶¶ 1, 21. The supreme court, concluding that the voluntary payment doctrine did not preclude MBS's § 100.207 claims because application of the doctrine would undermine the manifest purposes of the statute, reversed our decision. *See MBS-Certified Public Accountants, LLC v. Wisconsin Bell, Inc.*, 2012 WI 15, ¶¶ 4–5, 338 Wis. 2d 647, 809 N.W.2d 857 (*"MBS II"*). The supreme court also remanded the matter back to us so that we could consider issues initially briefed, but not considered in our original decision. *See id.*, ¶¶ 5, 75, 78–80, 83. Those issues are: (1) the viability of ILD's cross-appeal; (2) MBS's WIS. STAT. § 100.18 claim; and (3) MBS's claim under the Wisconsin Organized Crime Control Act, *see* WIS. STAT. §§ 946.80–946.88 (2007–08) ("WOCCA"). *See MBS II*, 338 Wis. 2d 647, ¶¶ 5, 75, 78–80, 83.

¶ 2. On remand, we conclude, for the reasons set forth below, that: (1) MBS's WIS. STAT. § 100.207(2) and (3)(a) claims against ILD; (2) MBS's WIS. STAT. § 100.18 claim against all defendants; and (3) MBS's WOCCA claim against all defendants should have survived defendants' motion to dismiss. In so concluding, we also herein address any arguments defendants brought in support of their motion to dismiss that were not addressed the first time the case was before us.[2] We

---

[2] To the extent the parties argue issues not addressed by

affirm the part of the trial court's order denying ILD's motion to dismiss MBS's § 100.207(2) claim; reverse the part of the trial court's order granting ILD's motion to dismiss MBS's § 100.207(3)(a) claim; reverse the part of the trial court's order granting defendants' motion to dismiss MBS's § 100.18 claim; and reverse the part of the trial court's order granting defendants' motion to dismiss MBS's WOCCA claim.[3]

## BACKGROUND AND STANDARD OF REVIEW

¶ 3. The facts of this case and standard of review are set forth in detail in *MBS II*, 338 Wis. 2d 647, ¶¶ 6–25. We will therefore provide only such additional facts as are required by the issues raised in the analysis section below.

## ANALYSIS

*A. The part of the trial court's order denying ILD's motion to dismiss MBS's claim under WIS. STAT. § 100.207(2) is affirmed, and the part of the trial court's order granting ILD's motion to dismiss MBS's claims under WIS. STAT. § 100.207(3)(a) is reversed.*

¶ 4. In its cross-appeal, ILD challenges the trial court's rulings as to MBS's WIS. STAT. § 100.207 claims. The complaint alleges that ILD and other defendants

this opinion, we conclude that our decision resolves all dispositive issues. *See Patrick Fur Farm, Inc. v. United Vaccines, Inc.*, 2005 WI App 190, ¶ 8 n.1, 286 Wis. 2d 774, 703 N.W.2d 707 ("[W]e decide cases on the narrowest possible grounds.").

[3] As will be discussed herein, the trial court granted defendants' motion to dismiss MBS's WOCCA claim on grounds that it was precluded by the voluntary payment doctrine. It did not otherwise discuss whether MBS's WOCCA claim was properly pled.

179

violated § 100.207(2) by billing MBS in a false, misleading, or deceptive manner, and by omitting information necessary to ensure that statements in the phone bills were not false, deceptive or misleading. The complaint alleges that defendants violated § 100.207(3)(a) by billing MBS for services that it did not affirmatively order, and that were not required by federal law, the FCC, or any local utilities commission. According to ILD, the trial court erroneously held that MBS stated a claim against it for violating § 100.207(2); and "erroneously held that . . . MBS had standing to bring a claim under § 100.207(3)."

¶ 5. We turn first to MBS's claim against ILD under Wis. Stat. § 100.207(2). Section 100.207(2), titled "Advertising and sales representations," provides:

> A person may not make in any manner any statement or representation with regard to the provision of telecommunications service, including the rates, terms or conditions for telecommunications service, which is false, misleading or deceptive, or which omits to state material information with respect to the provision of telecommunications service that is necessary to make the statement not false, misleading or deceptive.

(Bolding omitted from title.)

¶ 6. Regarding MBS's Wis. Stat. § 100.207(2) claim, the trial court determined that MBS did state a claim against all defendants, including ILD:

> Stating on a phone bill that a customer owes money for services the customer did not authorize is false. Taking the allegations of the complaint as true, each of the defendants made false statements "with regard to the provision of telecommunications service."

> And that seems to be the only element that must be shown to demonstrate a violation of [Wis. Stat. §]

100.207(2). Subsection (2) does not specify to whom the statement must be made, and because it states no limits, it does not appear limited in any way to telecommunications providers who deal directly with customers, and it may be construed to mean that if such a statement is made to anyone on the planet, it is unlawful . . . .

Whatever potential ambiguity might exist in a statute which doesn't identify the victim of the conduct the statute purports to outlaw is clarified in . . . [WIS. STAT. § 100.207](6)(e), [which] authorizes "any person or class of persons adversely affected by the failure to comply" to bring a suit . . . .

Even though ILD may not have made any statements to the plaintiffs directly, the complaint makes allegations which suggest[] that ILD['s] statements to Wisconsin Bell were false and it adversely affects the plaintiffs, and I must conclude that ILD's conduct is subject to the dictates of [WIS. STAT. § 100.207](2).

I understand the defendants' contention that the complaint fails to state a claim under [WIS. STAT. § 100.207](2) because telephone bills are not "advertisements" or "sales representations." The heading of [WIS. STAT. § 100.207](2) suggests that it relates only to advertising and sales representations.

However, the text of the statute is what counts, and the heading comes into play only if the Legislature's intent is not expressed clearly enough in the text. The text is clear and straightforward and not limited by any language about advertising or sales, and I don't see any need to refer to the title to understand its meaning.

■

¶ 7. We agree with the trial court that the statute does not limit prohibited representations to those made directly to the party alleging the violation. *See* WIS. STAT. § 100.207(2). Therefore, we agree that the

181

§ 100.207(2) claim against ILD may go forward even though the complaint does not allege that ILD forwarded billing information directly to MBS.

██

¶ 8. We also agree with the trial court that the statutory text does not limit the prohibited representations to "advertisements" or "sales representations." The text of WIS. STAT. § 100.207(2) very clearly prohibits false, misleading, or deceptive statements or representations made "*in any manner.*" *See id.* (emphasis added). Moreover, as the trial court correctly explained, we discern meaning from the statute's heading only if there is ambiguity in the text, and given that the text is clear and unambiguous, no such recourse to the heading is required. *See* WIS. STAT. § 990.001(6) ("The titles to subchapters, sections, subsections, paragraphs and subdivisions of the statutes and history notes are not part of the statutes."); *see also Continental Cas. Co. v. Milwaukee Metro. Sewerage Dist.*, 175 Wis. 2d 527, 532, 499 N.W.2d 282 (Ct. App. 1993) (Titles to statutes "may not be considered to create ambiguities relating to statutes being challenged."). We therefore conclude that, regardless of whether the telephone bill constituted an "advertisement," a "sales representation," or some other sort of representation, MBS has alleged violations against ILD within the purview of WIS. STAT. § 100.207(2). Consequently, we affirm the trial court's order denying ILD's motion to dismiss MBS's claim under § 100.207(2).

¶ 9. We turn next to MBS's claim against ILD under WIS. STAT. § 100.207(3)(a). Section 100.207(3)(a) provides:

> A person may not engage in negative option billing or negative enrollment of telecommunications services,

182

including unbundled telecommunications services. A person may not bill a customer for any telecommunications service that the customer did not affirmatively order unless that service is required to be provided by law, the federal communications commission or the public service commission. A customer's failure to refuse a person's proposal to provide a telecommunications service is not an affirmative request for that telecommunications service.

¶ 10. Regarding MBS's WIS. STAT. § 100.207(3)(a) claim against ILD, the trial court determined that MBS stated a claim against all defendants, with the exception of ILD:

> I am satisfied that ILD did not bill the plaintiffs. ILD collected, packaged, and communicated billing information to Wisconsin Bell, but that conduct cannot fairly be described as "billing" as in billing the plaintiffs, not any more than the post office or an internet service provider bills a homeowner by virtue of delivering a bill to the homeowner's attention.

> ILD may have played some aider or abettor role in this case, but the claim does not assert aider or abettor liability against ILD.

¶ 11. We disagree with the trial court's reasoning that the complaint does not allege that ILD violated WIS. STAT. § 100.207(3)(a) because the complaint did not describe "billing" by ILD. The statute expressly prohibits "engag[ing] in negative option billing," which is precisely what ILD is alleged to have done by collecting, packaging, and communicating billing information to Wisconsin Bell. *See id.* Indeed, we conclude that the complaint adequately alleges that all defendants, in their various roles in the cramming scheme, "engage[d] in negative option billing." *See id.* Contrary to defen-

183

dants' assertions, the complaint adequately explains each defendant's role in the cramming scheme. As described in the complaint, ILD's role is more significant than that of an internet provider or the post-office, which have no role in putting together the bills they deliver. We therefore conclude that the complaint pleads a § 100.207(3)(a) claim with the requisite particularity.

¶ 12. Moreover, we disagree with defendants' contention that the WIS. STAT. § 100.207(3) claim must be dismissed because MBS is not a "consumer" as defined by the Department of Agriculture, Trade, and Consumer Protection ("DATCP"). As an initial matter, we note that the statute does not use the word "consumer;" rather, it prohibits negative billing and enrollment to "customers." We also agree with the trial court that the defendants' arguments relying on the DATCP definition of "consumer" are unavailing:

> The defendants reason that the word "customers" cannot be understood without reference to related statutes and regulation[s] and the related statute[s] and regulations apply only to ["]consumers.["]

> However, I see no need to resort to the other statutes and regulations to understand the meaning of [WIS. STAT. §] 100.207(3)(a) because the meaning of the word ["]customer["] is plain, and its plain meaning does not distinguish between customers who buy telecommunications service for their homes as opposed to their businesses . . . . First, it is not mandatory for a court to consult related regulations in order to discern the meaning of the statute. A court is permitted to do so if it needs to do so, to ferret out legislative intent, but when the Legislature uses plain language, there may not be a reason to do so . . . . The second flaw in defendants' argument is the assumption that [§] 100.207 has no force apart from the regulations . . . . I

> have to disagree. The language of [WIS. STAT. § 100.207](6)(e) directs the Department to promulgate rules, but the statute does not state that the rules are the exclusive means of enforcing the statute. To the contrary, the statute explicitly provides for class action relief for a failure to comply with the statute. And that portion of the statute makes no precondition of a rule violation for liability under the statute. The third flaw under [defendants'] argument is that even if I was persuaded that I need to consult the regulation to better understand the meaning of the term ["]customer,["] the regulations are of limited help. Wisconsin Administrative Code ATCP 123.01 does not define the term ["]customer.["]

(Some formatting altered.)

■

¶ 13. Similarly, defendants point to no controlling authority for the contention that MBS, because it is a limited liability company, cannot be a "customer" under WIS. STAT. § 100.207(3)(a). *Cf.* WIS. STAT. § 180.0302(1) ("[A] corporation . . . has the same powers as a natural person to do all things necessary or convenient to carry out its business and affairs, including but not limited to power to . . . [s]ue and be sued, complain and defend in its corporate name."). Given the dearth of controlling precedent to the contrary and the supreme court's mandate that the statute is to be construed broadly to effectuate its anti-cramming purpose, *see MBS II*, 338 Wis. 2d 647, ¶¶ 43–44, 55, we conclude that MBS does have standing to sue defendants under § 100.207(3)(a). Therefore, we reverse the part of the trial court's order that grants ILD's motion to dismiss MBS's § 100.207(3)(a) claim.

¶ 14. In sum, construing the statute broadly with an eye toward advancing its legislative purpose, *see MBS II*, 338 Wis. 2d 647, ¶¶ 43–44, 55 ("The plain text

of Wis. Stat. § 100.207 sets forth a broad remedy available to persons who are adversely affected by cramming."), we conclude that MBS's Wis. Stat. § 100.207(2) & (3)(a) claims against all defendants were properly pled. Accordingly, we affirm the trial court's decision as to the § 100.207(2) claim against ILD, and we reverse the circuit court's decision regarding the § 100.207(3)(a) claim against ILD.

B. *The part of the trial court's order granting defendants' motion to dismiss MBS's Wis. Stat. § 100.18 claim is reversed.*

¶ 15. As noted by the first two MBS opinions, the trial court dismissed MBS's Wis. Stat. § 100.18 claim on grounds not related to the voluntary payment doctrine. *See MBS II*, 338 Wis. 2d 647, ¶¶ 20–21. Specifically, the trial court determined that the misleading bills were not "advertisements" or "sales promotions":

> [T]he claims alleged under [Wis. Stat. §] 100.18 should be dismissed because the complaint fails to allege the receipt of any untrue, deceptive, or misleading advertising and sales promotions from the defendants.
>
> The telephone bills themselves do not constitute advertisements or sales promotions, it's just a demand for payment, and therefore, I don't believe they fit within [§] 100.18.

In other words, the trial court was persuaded that § 100.18 applies only to claims involving "false advertising" and "sales promotions," and that bills do not fit either category.

¶ 16. We disagree with the trial court on this issue. The language of Wis. Stat. § 100.18 is extremely broad. Section 100.18(1) provides:

**No person, firm, corporation or association**, or agent or employee thereof, **with intent to** sell, distribute, **increase the consumption of** or in any wise dispose of any real estate, merchandise, securities, employment, **service,** or anything offered by such person, firm, corporation or association, or agent or employee thereof, **directly or indirectly**, to the public for sale, hire, use or other distribution, **or with intent to induce the public in any manner to enter into any** contract or **obligation relating to the** purchase, sale, hire, use or lease of any real estate, merchandise, securities, employment or **service, shall** make, publish, disseminate, circulate, or **place before the public, or cause, directly or indirectly, to be** made, published, disseminated, circulated, or **placed before the public**, in this state, **in a** newspaper, magazine or other publication, or in the form of a book, notice, handbill, poster, **bill**, circular, pamphlet, letter, sign, placard, card, label, or over any radio or television station, **or in any other way similar or dissimilar to the foregoing**, an advertisement, announcement, **statement or representation of any kind to the public relating to such** purchase, sale, hire, use or lease of such real estate, merchandise, securities, **service** or employment or to the terms or conditions thereof, **which** advertisement, announcement, **statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading**.

(Emphasis added.)

■

¶ 17. We conclude the plain language of the statute shows that statements or representations may be actionable even when contained in bills or other documents not traditionally considered "advertisements." Indeed, the statute includes "bill" as an example of a document that may contain a deceptive or misleading

representation, and even goes so far as to include documents "similar *or dissimilar*" to the enumerated items, so long as that document contains misrepresentations. *See id.* (emphasis added); *see also, e.g., Novell v. Migliaccio,* 2008 WI 44, ¶ 26, 309 Wis. 2d 132, 749 N.W.2d 544 (*"Novell I"*) (noting that Wis. Stat. § 100.18 "prohibits making false representations with the intent to sell real estate"). We therefore conclude that the phone bills and representations therein that induced MBS to pay for services it did not authorize are among the kind of misleading representations that Wis. Stat. § 100.18 prohibits.

¶ 18. Our conclusion is supported by other cases in which "representations" with respect to a Wis. Stat. § 100.18 claim were not "advertisements" as that word is commonly understood. For example, in *Novell I, supra,* the representations at issue included a real estate seller's painting a basement wall in order to represent to the buyer that there had been no water damage there. *See id.,* 309 Wis. 2d 132, ¶¶ 14, 18–20, 59, 62; *see also Novell v. Migliaccio,* 2010 WI App 67, ¶¶ 10–13, 325 Wis. 2d 230, 783 N.W.2d 897 (*"Novell II"*). Similarly, in *Dorr v. Sacred Heart Hospital,* 228 Wis. 2d 425, 597 N.W.2d 462 (1999), we held that a "hold harmless" provision of a provider agreement—which advised plaintiffs that they would be held harmless for hospital costs when in reality the hospital attempted to collect for its services via a lien on plaintiffs' property —constituted a "representation made to the public within the meaning of [§ 100.18]," *see Dorr,* 228 Wis. 2d at 445–46. Indeed, in *Dorr,* we concluded that "[s]ection 100.18 prohibits deceptive, misleading, or *untrue statements of any kind* to the public made in a commercial setting, *no matter how made." See Dorr,* 228 Wis. 2d at 445 (emphasis added). While defendants attempt to

distinguish *Dorr* by arguing that the alleged misrepresentation was made in the context of promoting a service—which defendants liken to what they describe as "false advertising"—it is clear that in the case before us, the misrepresentations were made to "induce . . . an obligation" to pay for services not ordered, which is directly covered by the statute. *See* § 100.18(1).

■■

¶ 19. We also conclude—contrary to defendants' assertions—that MBS has properly alleged a WIS. STAT. § 100.18 misrepresentation claim against *all* defendants. "[T]here are three elements in a § 100.18 cause of action: (1) the defendant made a representation to the public with the intent to induce an obligation, (2) the representation was 'untrue, deceptive or misleading,' and (3) the representation materially induced (caused) a pecuniary loss to the plaintiff." *Novell I*, 309 Wis. 2d 132, ¶ 49 (citation omitted). In the case before us, the complaint alleges that defendants, by acting in concert to submit bills for services that MBS did not authorize, made representations to the public with the intent to induce an obligation to pay for unauthorized services, which was misleading and deceptive, and which caused pecuniary loss to MBS. *See* § 100.18(1). While the defendants argue that MBS does not constitute the "public" because MBS had a contractual relationship with Wisconsin Bell, there was no contract in place with any of the defendants for the billed services at issue; indeed that is crux of this suit—that MBS and others were billed for services for which they never contracted. In this case, charges were billed to a party who had never agreed to pay for them in the hope of tricking that party into assuming a payment obligation. We agree with MBS that, "[t]his is the very type of false or misleading representation that § 100.18 addresses."

¶ 20. Moreover, we conclude that the voluntary payment doctrine does not bar MBS's WIS. STAT. § 100.18 claim. Because MBS has properly stated a claim under the statute, we must now analyze whether the voluntary payment rule is at odds with the manifest purpose of the statute. *See MBS II*, 338 Wis. 2d 647, ¶¶ 78, 80 ("If the court of appeals concludes that MBS has stated a claim under WIS. STAT. § 100.18(1), then it will need to address whether the voluntary payment doctrine is a viable defense to a claim under that statute."). As noted above, it is evident from the language of § 100.18, as well as relevant case law, that the statute applies to a broad range of false statements and misrepresentations. *See Novell I*, 309 Wis. 2d 132, ¶¶ 14, 18–20, 59, 62; *Novell II*, 325 Wis. 2d 230, ¶¶ 10–13; *Dorr*, 228 Wis. 2d at 445–46. It is also evident from the statutory language that the purpose of the statute is to prohibit certain activities—in this case, representations made in a commercial setting —without placing the heightened pleading requirements that fraud requires. *Cf. Butcher v. Ameritech Corp.*, 2007 WI App 5, ¶ 15, 298 Wis. 2d 468, 727 N.W.2d 546 (fraud a defense to the voluntary payment doctrine). If a party violating § 100.18 can defend its actions using the voluntary payment rule, then the broad, remedial purpose of § 100.18 would be undermined. *See MBS II*, 338 Wis. 2d 647, ¶¶ 54–55 (voluntary payment doctrine did not apply to WIS. STAT. § 100.207 claim because legislative purpose would be severely undermined). Consequently, we conclude that the voluntary payment doctrine does not apply to claims under § 100.18, and consequently does not bar MBS's § 100.18 claim against defendants. Thus by alleging that defendants represented to MBS that it owed money for services that it did not authorize —whether directly or indirectly—the complaint properly alleges a claim under § 100.18.

*C. The part of the trial court's order granting defendants' motion to dismiss MBS's WOCCA claim is reversed.*

¶ 21. As noted, the defendants moved to dismiss MBS's claim under the WOCCA, arguing that MBS failed to properly plead acts of racketeering activity as required by Wɪs. Sᴛᴀᴛ. § 946.82(4). The trial court, concluding that the voluntary payment doctrine precluded the WOCCA claim, did not determine whether the WOCCA claim was properly pled.

¶ 22. We conclude that the complaint does state a claim under WOCCA. Wɪsᴄᴏɴsɪɴ Sᴛᴀᴛ. § 946.83(3) provides: "No person employed by, or associated with, any enterprise may conduct or participate, directly or indirectly, in the enterprise through a pattern of racketeering activity." Wɪsᴄᴏɴsɪɴ Sᴛᴀᴛ. § 946.82(3) defines "pattern of racketeering activity" as "engaging in at least 3 incidents of racketeering activity that have the same or similar intents, results, accomplices, victims or methods of commission or otherwise are interrelated by distinguishing characteristics . . . ." Wɪsᴄᴏɴsɪɴ Sᴛᴀᴛ. § 946.82(4) defines "racketeering activity" as "the attempt, conspiracy to commit, or commission of" specified predicate felonies, including felony theft under Wɪs. Sᴛᴀᴛ. § 943.20(3)(bf)-(e). The complaint alleges that defendants engaged in at least three separate acts of felony theft, contrary to Wɪs. Sᴛᴀᴛ. § 943.20, as well as mail fraud. While various defendants argue that the complaint lacks specificity as to the common "enterprise" the defendants engaged in with respect to the WOCCA claim, the complaint in fact explains defendants' ongoing roles in the common scheme in painstaking detail, describing the process of generating false

191

billing information, sending that information to the service providers, and mailing it to MBS and others with the expectation that they would unwittingly pay for telecommunications services they did not authorize. *See Jennings v. Emry*, 910 F.2d 1434, 1440 (7th Cir. 1990) (In a Racketeer Influenced and Corrupt Organizations Act ("RICO") case, "[w]hether legal or extralegal, each enterprise is an ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchial or consensual decision-making.") (citation omitted). *See also State v. O'Connell*, 179 Wis. 2d 598, 606, 508 N.W.2d 23 (Ct. App. 1993) (case law interpreting RICO is persuasive authority when we interpret WOCCA); *State v. Evers*, 163 Wis. 2d 725, 732, 472 N.W.2d 828 (Ct. App. 1991) (same). Indeed, the portion of the complaint explaining how defendants violated the WOCCA is over four pages long. The complaint more than adequately lays out each defendant's role in the cramming scheme, and more than adequately puts defendants on notice of WOCCA liability.

¶ 23. In reaching our conclusion, we determine the complaint properly alleges a pattern of racketeering activity with respect to the WIS. STAT. § 943.20 felony theft allegation. Defendants argue that because the discrete charges issued to MBS and others were less than $2500, they fail to constitute felony theft pursuant to § 943.20(bf). In support, they cite to *State v. Swinson*, 2003 WI App 45, 261 Wis. 2d 633, 660 N.W.2d 12, in which we held that fifteen convictions of felony theft under § 943.20 were not multiplicitous. *See Swinson*, 261 Wis. 2d 633, ¶¶ 27, 47. However, *Swinson* does not support defendants' contentions because it is not analogous to the claim before us. In *Swinson*, the defendant was convicted of fifteen counts of theft by fraudulent

192

misrepresentation. *Id.*, ¶ 3. The State's theory of the case was that the defendant submitted false invoices to his employer for work that was never actually completed, and that each false invoice for services submitted was a false representation because the defendant "had suffi-cient time between preparing each separate invoice to reflect on his actions and to recommit to the criminal conduct." *Id.*, ¶¶ 31–32, 35. To put it another way, the defendant's conduct in *Swinson* was similar to a person who buys a magazine at a newsstand each morning with cash. In the case before us, in contrast, the conduct alleged by the complaint is more similar to that of a family who signs up for a magazine subscription; the acts of theft and fraud are alleged as part of an ongoing pattern of racketeering activity among numerous defen-dants that affected an entire class of plaintiffs. In the circumstances before us, it is not inappropriate to aggre-gate the discrete charges to constitute acts of theft of $2500 or more.

¶ 24. Our position is supported by *State v. Copen-ing*, 103 Wis. 2d 564, 572–73, 309 N.W.2d 850 (Ct. App. 1981), in which we held that multiple acts of check kiting could be considered to be one criminal offense because they were all part of the same scheme. In *Copening*, we concluded that a single count of theft by fraud could be brought even though the check kiting took place over a period of time and even though it involved multiple victims. *See id.* As we explained in that case:

> [W]hen a defendant is operating an ongoing fraudulent scheme, it may be necessary to allege several individual transactions which, considered together, reflect the fraudulent operation. We can conceive of no other manner in which a check kiting operation, such as involved here, can be alleged. Although each check passed represents a distinct taking, it is within the

state's discretion to charge the entire scheme as a single offense. The single criminal design to commit theft is inferable from the complaint.

*Id.* at 573 (footnote omitted).

¶ 25. Similarly, in this case, the defendants are alleged to have engaged in a scheme to steal money over a period of time from multiple victims. We therefore conclude that the individual acts of theft can be considered as a single offense involving more than $2500 for purposes of establishing felony theft.

¶ 26. Because we conclude that the complaint properly alleges a WOCCA claim with respect to felony theft, we need not decide whether the complaint adequately alleges acts of mail fraud, even though the parties dispute the issue. *See Patrick Fur Farm, Inc. v. United Vaccines , Inc.*, 2005 WI App 190, ¶ 8 n.1, 286 Wis. 2d 774, 703 N.W.2d 707 ("[W]e decide cases on the narrowest possible grounds.").

¶ 27. We further conclude that the voluntary payment doctrine does not apply to preclude MBS's WOCCA claim. Similar to WIS. STAT. §§ 100.207 and 100.18, the purpose of the WOCCA is to compensate parties that have been injured by racketeering and to deter such behavior. *See* WIS. STAT. § 946.81 ("The legislature finds that a severe problem is posed in this state by the increasing organization among certain criminal elements and the increasing extent to which criminal activities and funds acquired as a result of criminal activity are being directed to and against the legitimate economy of the state. The legislature declares that the intent of the Wisconsin Organized Crime Control Act is to impose sanctions against this subversion of the economy by organized criminal elements and

to provide compensation to private persons injured thereby."). Also, as we recently held in *S.C. Johnson & Son, Inc. v. Morris*, 2010 WI App 6, ¶ 33, 322 Wis. 2d 766, 799 N.W.2d 19, the remedial provisions of the WOCCA are to be given "liberal construction." Given the statutory purpose and the mandate that the statute is to be construed broadly to effectuate its manifest purpose, we conclude that applying the voluntary payment doctrine would frustrate the purpose of the WOCCA. *Cf. MBS II*, 338 Wis. 2d 647, ¶ 82 ("[T]he conflict between the statute's purpose and the common law defense leaves no doubt that the legislature intended that the common law defense should not be applied to bar claims under the statute."). Consequently, we hold that the voluntary payment doctrine does not, in fact, bar MBS's WOCCA claims. Therefore, because MBS has stated a valid WOCCA claim, and because the voluntary payment doctrine does not apply, we deny defendants' motion to dismiss.

## CONCLUSION

¶ 28. In light of the foregoing, we affirm the part of the trial court's order denying ILD's motion to dismiss MBS's § 100.207(2) claim; reverse the part of the trial court's order granting ILD's motion to dismiss MBS's § 100.207(3)(a) claim; reverse the part of the trial court's order granting defendants' motion to dismiss MBS's § 100.18 claim; and reverse the part of the trial court's order granting defendants' motion to dismiss MBS's WOCCA claim.

*By the Court.*— Order affirmed in part; reversed in part.