COURT OF APPEALS
DECISION
DATED AND FILED

October 22, 2025

Samuel A. Christensen
Clerk of Court of Appeals

NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2024AP1448**

**STATE OF WISCONSIN**

Cir. Ct. No. 2022CV62

**IN COURT OF APPEALS
DISTRICT II**

BRITTANY ANN JAGDFELD,

PLAINTIFF-APPELLANT,

NETWORK HEALTH PLAN,

INVOLUNTARY-PLAINTIFF,

V.

LYNN JAGDFELD AND AMERICAN FAMILY MUTUAL INS. CO.,

DEFENDANTS-RESPONDENTS.

APPEAL from an order of the circuit court for Fond du Lac County: TRICIA L. WALKER, Judge. *Affirmed*.

Before Neubauer, P.J., Gundrum, and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Brittany Ann Jagdfeld appeals from an order granting summary judgment in favor of Lynn Jagdfeld and her insurer American Family Mutual Ins. Co. with respect to Brittany's negligence claim, which arose out of a horseback riding accident.[1]  Brittany contends the circuit court erred in concluding that Lynn was immune from liability under Wisconsin's equine activities statute, WIS. STAT. § 895.481 (2023-24).[2]  Because the court correctly concluded that the undisputed facts entitled Lynn to the statutory immunity, we affirm.

¶2     The undisputed facts before the circuit court, many of which were derived from Brittany's deposition testimony, established the following.  On June 23, 2019, Brittany visited the home of her former sister-in-law, Lynn, along with several other women who were all previously acquainted.  Brittany, then around thirty years of age, had substantial horseback riding experience and considered herself an "experienced horse rider."  She had ridden horses since she was 9 years old, owned several horses until she was 18, and worked on various horse farms.  She estimated that she competed in approximately 20 show jumping and barrel racing events each year between the ages of 12 and 17.  In addition to competing and working at various horse farms, she had worked as a counselor at a summer camp.  In that role, she assisted the campers with guided trail rides and instructed the campers on how to saddle, groom, and care for horses.  Her experience with horses made her familiar with horse equipment.  Brittany also acknowledged that Lynn

---

[1]  We refer to Brittany and Lynn by their first names because they share the same surname.

[2]  All references to the Wisconsin Statutes are to the 2023-24 version.

knew she had "been an avid horseback rider for her entire life." Drawing on this admission, the circuit court noted "that Lynn … was well aware of [Brittany's] abilities and experience with horses."

¶3      While Brittany, Lynn, and the other women were gathered at Lynn's house, Lynn offered to let Brittany ride her horse, and Brittany accepted. Lynn saddled the horse while Brittany selected a helmet. Even though Brittany did not double-check the cinch of the saddle, she did inspect the tack before attempting to mount the horse and believed it "all looked like good, dependable equipment."

¶4      To mount the horse, Brittany stepped onto a two-step mounting block while Lynn brought the horse into position and held the lead rope around the halter. Lynn did not place a bridle on the horse because, as Brittany testified, she intended to "hand-lead walk him while I was on him." Brittany acknowledged that there was "nothing inherently wrong" with using only a halter to lead a horse on a walk even though it offers less control of the horse. As Brittany pushed off of the mounting block to swing her right leg over the horse, she "heard a very large crack" and the horse moved forward. Brittany "felt the saddle shift backwards, and it spooked him." The horse continued to move forward as she tried to swing her leg over, and she was "tossed … off" the horse and fell, fracturing her right leg.

¶5      Brittany sued Lynn for negligence, seeking to recover damages for the injuries she sustained as a result of her fall. Brittany alleged in her complaint that Lynn had acted negligently by failing to properly saddle the horse, failing to have a bridle in the horse's mouth, and failing to maintain control of the horse. Lynn moved for summary judgment, arguing that she was immune under WIS. STAT. § 895.481(2) because Brittany was injured while engaged in an equine activity. The circuit court granted Lynn's motion after concluding that the statutory immunity

covered Brittany's accident and that no exception within the statute applied to Brittany's claim.

¶6      We review a grant of summary judgment de novo, using the same methodology as the circuit court.  *Emjay Inv. Co. v. Village of Germantown*, 2011 WI 31, ¶24, 333 Wis. 2d 252, 797 N.W.2d 844.  Summary judgment will be granted when "there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law."  WIS. STAT. § 802.08(2); *R.W. Docks & Slips v. State*, 2001 WI 73, ¶12, 244 Wis. 2d 497, 628 N.W.2d 781.

¶7      Brittany's appeal turns on the interpretation and application of the equine immunity statute, WIS. STAT. § 895.481.  Our task in construing the statute "is to determine what [it] means so that it may be given its full, proper, and intended effect."  *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110.  We start with the text of the statute, and if its meaning is plain, "we ordinarily stop the inquiry."  *Id.*, ¶45 (citation omitted).  We give the words of a statute their common, ordinary, and accepted meaning.  *Id.*

¶8      Under WIS. STAT. § 895.481(2), a person participating in horseback riding or other equine activities is immune from civil liability "if a[nother] person participating in [an] equine activity is injured or killed as the result of an inherent risk of equine activities."[3]  Brittany does not argue that § 895.481(2) does not cover Lynn's alleged negligence.  Instead, she focuses on subsection (3) of the statute, which lists five circumstances in which the statutory immunity does not apply.  Brittany contends that two of those circumstances exist here, and thus the circuit

---

[3] The phrase "[i]nherent risk of equine activities" is defined in WIS. STAT. § 895.481(1)(e)1.-2. to include, as relevant here, (1) "[t]he propensity of an equine to behave in a way that may result in injury or death to a person on or near it"; and (2) "[t]he unpredictability of an equine's reaction to a sound, movement or unfamiliar object, person or animal."

court erred in concluding that Lynn was immune from liability. We address each in turn.

¶9 Brittany first invokes the exception in WIS. STAT. § 895.481(3)(a), which forecloses immunity if the person seeking it "[p]rovides equipment or tack that he or she knew or should have known was faulty and the faulty equipment or tack causes the injury or death." In her principal brief, Brittany argued that the circuit court should have denied Lynn's motion because material issues of fact exist related to the mounting block and tack supplied by Lynn. Brittany abandoned this argument in her reply brief, however, and thus we need not address it further.

¶10 Brittany instead focuses on the exception in WIS. STAT. § 895.481(3)(b), which withdraws immunity if the person seeking it "[p]rovides an equine to a person and fails to make a reasonable effort to determine the ability of the person to engage safely in an equine activity or to safely manage the particular equine provided based on the person's representations of his or her ability." Brittany argues that the phrase "based on the person's representations of his or her ability" at the end of the exception requires the person seeking immunity to, in her words, "make a present day inquiry of the rider as to their current level of experience and competence when it comes to riding a horse." She contends that the exception "clearly anticipates a colloquy of questions and responses as to current abilities to ride." Because there are no facts showing that Lynn made a present-day inquiry, and relied instead on her pre-existing knowledge of Brittany's horseback riding experience, Brittany contends the exception in § 895.481(3)(b) defeats Lynn's claim of immunity.

¶11 We disagree with Brittany's interpretation of this exception. The phrase "based on the person's representations of his or her ability" at the end of WIS.

STAT. § 895.481(3)(b) requires only that the person to whom the equine is given make "representations of his or her ability." No language in the exception requires the provider to obtain those representations at or immediately before the time the equine is provided. Put another way, the exception does not preclude a provider who is already aware of a rider's ability from relying on that previously acquired knowledge in "mak[ing] a reasonable effort to determine the ability of the person to engage safely in an equine activity or to safely manage the particular equine provided based on the person's representations of his or her ability." *See* WIS. STAT. § 895.481(3)(b).

¶12　Nor does the exception specify that the representations of the rider's ability must be made orally. Both this court and our supreme court have recognized, in other contexts, that representations can be made through acts or conduct. *See, e.g.*, ***John Doe 1 v. Archdiocese of Milwaukee***, 2007 WI 95, ¶¶42-44, 303 Wis. 2d 34, 734 N.W.2d 827 ("We have held that acts can be the equivalent of a representation."); ***Scandrett v. Greenhouse***, 244 Wis. 108, 113, 11 N.W.2d 510 (1943) (fraudulent representations "may be made by the acts or conduct of the party"); ***Novell v. Migliaccio***, 2010 WI App 67, ¶¶10-11, 325 Wis. 2d 230, 783 N.W.2d 897. Brittany provides no reason why we should not apply this common understanding in construing WIS. STAT. § 895.481(3)(b). Had the legislature intended to require a conversation between rider and provider about the rider's ability, it could have required that the rider make "statements" or "oral" or "verbal" representations about his or her ability. It did not, however, and we decline Brittany's invitation to construe the statute to require them.

¶13　Here, the summary judgment record contained uncontradicted evidence that Brittany was an experienced and capable horseback rider. Brittany herself testified to her extensive involvement in horseback riding. She considered

herself an experienced rider, participated in show jumping and barrel racing competitions, and worked at multiple horse farms. She also worked as a summer camp counselor, teaching others about horses and horse-riding equipment. Through her years-long participation in these activities, Brittany represented herself to be a skilled and capable horseback rider.

¶14 In addition to this detailed history, it was undisputed that Lynn was aware of Brittany's experience and ability before she offered to let Brittany ride her horse. Brittany testified that Lynn "knew that … I've been an avid horseback rider my entire life." Unlike a situation in which a provider of a horse meets a rider for the first time when the horse is provided, Lynn had known Brittany for years and was specifically familiar with her extensive horseback riding experience.

¶15 Given these undisputed facts, no reasonable jury could conclude that Lynn "fail[ed] to make a reasonable effort to determine" Brittany's ability to ride Lynn's horse or to safely manage the horse by relying on her pre-existing knowledge of Brittany as an experienced and capable rider. We thus agree with the circuit court that the exception in WIS. STAT. § 895.481(3)(b) does not apply and that Lynn is immune from liability under § 895.481(2).

¶16 In her reply brief, Brittany suggests that the lack of a contemporaneous inquiry left Lynn unaware that Brittany developed vertigo since she last rode a horse, had a history of recent falls even when not riding horses, and had not ridden a horse in several years. However, Brittany cites no record evidence to establish these facts, as she was required to do. *See* WIS. STAT. RULE 809.19(1)(e); *see **Guse v. City of New Berlin***, 2012 WI App 24, ¶18 n.7, 339 Wis. 2d 399, 810 N.W.2d 838. We have no obligation to search the record for evidence to support them. ***Roy v. St. Lukes Med. Ctr.***, 2007 WI App 218, ¶10 n.1,

305 Wis. 2d 658, 741 N.W.2d 256. Thus, these assertions do not furnish a basis for relief.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.